COMMUNITY NATIONAL BANK OF
PONTIAC, a National Banking
Association, Plaintiff,

v.

Ray M. GIDNEY, as Comptroller of the
Currency of the United States, and
Manufacturers National Bank of De-
troit, a National Banking Association,
Defendants.

Civ. No. 19383.

United States District Court
E. D. Michigan, S. D.

March 10, 1961.

Clarence K. Patterson, Pontiac, Mich.,
Marx, Levi, Thill & Wiseman, Detroit,
Mich., for plaintiff.

George E. Woods, U. S. Atty., and Or-
rin C. Jones, Asst. U. S. Atty., Detroit,
Mich., Donald B. MacGuineas and An-
drew P. Vance, Attys., Dept. of Justice,
Washington, D. C., for defendant Ray M.
Gidney.

Bodman, Longley, Bogle, Armstrong & Dahling, Detroit, Mich., for defendant Manufacturers Nat. Bank of Detroit.

FREEMAN, District Judge.

This motion for production of documents arises out of an action by the plaintiff, Community National Bank of Pontiac, v. the United States Comptroller of the Currency (hereinafter referred to as the "Comptroller") and the defendant bank, Manufacturers National Bank of Detroit.

The essential allegations in the complaint are that the Comptroller, on or about August 3, 1959, approved an application by the defendant bank for permission to establish a branch bank in Bloomfield Township, Oakland County, Michigan; that such approval was unauthorized by law and not in accord with the requirements of 12 U.S.C.A. § 36(c) in that the area in which the branch was established did not constitute a "Village" within the meaning of M.S.A. § 23.762, Comp.Laws 1948, § 487.34, and was further unauthorized by law in that there was no necessity for such branch at the chosen location; and that plaintiff has been and is being injured by the establishment and operation of such branch.

The principal relief sought is in the nature of an injunction requiring the Comptroller to revoke his approval of the branch and enjoining the defendant bank from further operating such branch.

In connection with its discovery, plaintiff now requests of the Comptroller the production of the following two items:

1. Any reports relating to the branch bank in issue made to the Comptroller by a National Examiner or other designated persons;

2. Any notice, work papers or other writings in the files of the Comptroller relating to any survey and examination made in connection with the establishment of such branch.

In opposition to the motion, the defendants allege that the requested documents are not relevant to any issue in this action and that, even if relevant, such documents are privileged and not subject to a motion for production.

None of the issues raised by this motion were determined by the order of March 18, 1960, entered by Chief Judge Levin, nor did such order in any way preclude a determination of such issues by this court.

### Relevancy

The establishment of branch banks by a national banking association is governed by 12 U.S.C.A. § 36(c), which provides in pertinent part:

"The conditions upon which a national banking association may retain or establish and operate a branch or branches are the following:

\* \* \* \* \* \*

"(c) A national banking association may, with the approval of the Comptroller of the Currency, establish and operate new branches: \* \* \* (2) at any point within the State in which said association is situated, if such establishment and operation are at the time authorized to State banks by the statute law of the State in question by language specifically granting such authority \* \* \* and subject to the restrictions as to location imposed by the law of the State on State banks."

It is clear from the quoted portion of the statute that the following two requirements must be satisfied before a branch bank may be established:

1. Approval of the Comptroller must be obtained;

2. The establishment and operation of the branch must be authorized to State banks by a State statute.

With respect to the second requirement above, the applicable Michigan statute, M.S.A. § 23.762, provides in pertinent part:

"Any bank \* \* \* may \* \* \* establish and operate a branch or branches within a village or city oth-

er than that in which it was originally chartered: Provided, That the village or city in which it is proposed to establish and operate a branch is located in the same county in which the parent bank has its principal office or, if not in said county, then within 25 miles of said parent bank * * *."

On the basis of the complaint and these two statutes, plaintiff contends that the two issues before the court are:

1. Whether the Comptroller abused his discretion in authorizing the branch;

2. Whether the branch is located in a village, as defined by Michigan law.

Plaintiff further contends that the requested documents are relevant to both of these issues.

It is the contention of the defendants that the first alleged issue is not properly before the court because this court lacks jurisdiction to review agency action which, by law, is committed to agency discretion; and that the requested documents are not relevant to the second issue above.

■ Although the complaint does not allege abuse of discretion, but only alleges a lack of "necessity" for the establishment of the branch, this court, interpreting the complaint liberally, will proceed on the basis of an alleged abuse of discretion, especially in view of the fact that the Comptroller in his briefs and oral arguments also construed the complaint as alleging abuse of discretion.

The documents which are the subject of this motion clearly would be relevant to the first issue contended for by plaintiff. The precise questions before the court, therefore, are:

1. Does this court have jurisdiction to determine whether the Comptroller abused his discretion?

2. Are the documents relevant to the issue of whether or not the branch was located in a "village"?

Judicial review of agency action is governed by § 10 of the Administrative Procedure Act, 5 U.S.C.A. § 1009. That section provides in pertinent part as follows:

"Except so far as (1) statutes preclude judicial review or (2) *agency action is by law committed to agency discretion.*

"(a) Any person suffering legal wrong because of any agency action, or adversely affected or aggrieved by such action within the meaning of any relevant statute, shall be entitled to judicial review thereof. ·

*      *      *      *      *      *

"(e) So far as necessary to decision and where presented the reviewing court shall * * * (B) hold unlawful and set aside agency action, findings, and conclusions found to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law * * *." (Emphasis supplied).

In the case of Luckenbach S. S. Co. v. United States, D.C.Del.1959, 179 F.Supp. 605, 608, this section was analyzed by the court as follows:

"The wording of the Administrative Procedure Act apparently makes no change in the law of reviewability. Section 10 is so worded that it is obvious that the introductory clause modifies each of the subsections. Thus agency action is left unreviewable if the statute precludes review, or to the extent agency action is by law committed to agency discretion. These two reasons were the only ones precluding review of administrative action by the court before the Administrative Procedure Act was enacted and the wording of the Act has brought about no change."

■ This court is in accord with the analysis in the Luckenbach case and is of the opinion that it is evident from the clear language of this section that al-

though agency action may ordinarily be reviewed by the courts as to arbitrariness, capriciousness or abuse of discretion, there is no jurisdiction to review agency action when statutes preclude review or when agency action is by law committed to agency discretion. It, therefore, appears that if the agency action in the present case is by law *committed* to the discretion of the Comptroller, such action is not reviewable—even for arbitrariness or abuse of discretion. Luckenbach S. S. Co. v. United States, supra. See also: United States v. Cottman Co., 4 Cir., 190 F.2d 805; Homovich v. Chapman, 89 U.S.App.D.C. 150, 191 F.2d 761; National Labor Relations Board v. Guy F. Atkinson Co., 9 Cir., 195 F.2d 141.

The crucial issue before the court, therefore, is whether Congress intended to commit the approval of proposed branch banks, pursuant to 12 U.S.C.A. § 36(c), to the non-reviewable discretion of the Comptroller.

In Heikkila v. Barber, 1953, 345 U.S. 229, 73 S.Ct. 603, 97 L.Ed. 972, the Supreme Court was faced with the question of whether administrative decisions made under the Immigration Act of 1917 were subject to the provisions of § 1009 of 5 U.S.C.A. The Court there said, 345 U.S. at page 233, 73 S.Ct. at page 605:

> "No easy answer is found in our decisions on the subject. Each statute in question must be examined individually; its purpose and history as well as its text are to be considered in deciding whether the courts were intended to provide relief for those aggrieved by administrative action."

After an examination of the history and purpose of the Act in issue, the Court in the Heikkila case held that the Administrative Procedure Act did not grant judicial review of agency action, pursuant to the Immigration Act of 1917.

In the absence of any cases deciding the question before the court in the present case, it is necessary to examine the purpose and history of the statute, 12 U.S.C.A. § 36(c), which requires approval by the Comptroller before a new branch bank can be established.

Adjudicated cases involving the power of the Comptroller generally indicate that Congress intended to place in the hands of the Comptroller almost complete control over many aspects of banking.

In First National Bank of Capitol Hill v. Murray, 8 Cir., 1914, 212 F. 140, the Comptroller had refused permission to a National Bank to change the location of its banking office, pursuant to a statute which provided that a National Bank could move with the approval of the Comptroller. The Bank contended that the Comptroller had no discretion to disapprove the change and it made the move without the Comptroller's approval. In a suit to forfeit its charter for violation of law, the Court stated, at page 142:

> "Extensive powers of control and visitation have been confided to the Comptroller of the Currency, and his acts within the law are not subject to review by the courts. The above provisions of the acts of Congress were intended to secure uniformity, efficiency, and safety in the conduct of the business authorized and they should be construed in the light of that purpose."

In the case of Liberty National Bank of South Carolina at Columbia v. McIntosh, 4 Cir., 1927, 16 F.2d 906, 909, involving the power of the Comptroller to liquidate National Banks and to appoint receivers, the court used the following language:

> "Ample authority will be found to make clear the purposes of the National Banking Act, and to fully and clearly show the power and authority of those charged with its administration, especially that of the Comptroller of the Currency. His jurisdiction in respect to all matters properly within his discretion is exclusive, and he is in respect thereto in no manner amenable to any court, nor is his action subject to review therein.

\* \* \* \* \* \*

" 'The receiver is the instrument of the Comptroller. He is appointed by the Comptroller, and the power of appointment carries with it the power of removal. It is for the Comptroller to decide when it is necessary to institute proceedings against the stockholders to enforce their personal liability, and whether the whole or a part, and if only a part, how much, shall be collected. These questions are referred to his judgment and discretion, and his determination is conclusive. The stockholders cannot controvert it. It is not to be questioned in the litigation that may ensue. He may make it at such time as he may deem proper, and upon such data as shall be satisfactory to him.' Mr. Justice Swayne in Kennedy v. Gibson, 75 U. S. (8 Wall.) 505, 19 L.Ed. 476."

To the same effect is Davis, Administrative Law Treatise, Vol. 1, sec. 4.04, p. 247:

"Probably the outstanding example in the federal government of regulation of an entire industry through methods of supervision, and almost entirely without formal adjudication, is the regulation of national banks. The regulation of banking may be more intensive than the regulation of any other industry, and it is the oldest system of economic regulation. The system may be one of the most successful, if not the most successful. The regulation extends to all major steps in the establishment and development of a national bank, including not only entry into the business, changes in status, consolidations, reorganizations, but also the most intensive supervision of operations through regular examination of banks."

And, on p. 251:

"The critical process in the federal control of banking is the supervising power, not adjudication or rule making. The supervising power is not and probably cannot be surrounded by procedural safeguards in formal hearings, and it is largely immune from the check of judicial review. Freedom from arbitrary or unfair administratrive action must depend upon factors other than formal procedures or judicial review."

The case most analogous to the case at bar is First National Bank of McKeesport v. First Federal Savings & Loan Association, 1955, 96 U.S.App.D.C. 194, 225 F.2d 33. In that case an action was brought by several banks against the Federal Home Loan Bank Board and two Federal Savings and Loan Associations seeking a declaration that the granting of permission for and the establishment of branch banks was illegal. In upholding the power of the Board to grant permission for the establishment of branches without a hearing, the Court stated, 225 F.2d at page 36:

"What we have said disposes of these cases and we, therefore, are not bound to consider the question of appellants' standing. We merely call attention to the fact that, since authority to permit establishment of a branch is clearly committed to agency discretion, the matter is disposed of automatically by Section 10 of the Administrative Procedure Act, 5 U.S.C.A. § 1009."

The statute at issue in the present case, 12 U.S.C.A. § 36(c), is silent about judicial review. It simply recites that branches may be established "with the approval" of the Comptroller. Congress did not lay down any standards by which the propriety of approval or disapproval pursuant to such statute could be determined.

It is also evident that the Comptroller operates in an area extremely important to finance and to the national economy. In passing on branch bank applications, the Comptroller must necessarily utilize his great expert knowledge and consider questions of policy, as well as of fact, with respect to the interest of the public; coordination with other federal and

state supervisory agencies; and banking conditions in general.

In view of the above cases and considerations, and especially in view of the failure of Congress to provide any standards by which this court could determine whether the exercise of discretion by the Comptroller was "reasonable" or whether it was "arbitrary", this court is of the opinion that Congress intended that the Comptroller have an exclusive and unreviewable power of discretion in determining whether or not to approve the establishment of branch banks pursuant to 12 U.S.C.A. § 36(c). The court, therefore, is further of the opinion that the discretion provided for in 12 U.S.C.A. § 36(c) comes within the second exception to Section 10 of the Administrative Procedure Act and that this court is without jurisdiction to review the action of the Comptroller in the present case.

■ Turning to the second question, which deals with the relevancy of the documents to the issue of whether or not the branch was located in a "village", this court is of the opinion that regardless of their relevancy, plaintiff has failed to show good cause as required by Rule 34, 28 U.S.C.A.

### Privilege

Although the conclusions reached above make a discussion of the question of privilege unnecessary, this court desires to comment on this question in view of the arguments and briefs by counsel directed to such question.

It is evident that the instant case does not involve any of the well established common law grounds for claiming privilege such as military secrets, identity of informers, or privileged relationships, nor does the Comptroller claim any statutory privilege.

In support of his claim of privilege, the Comptroller has cited several cases upholding claims of "executive privilege". These cases grant privilege on the basis of public policy and fall into two general categories:

(1) Those cases indicating a concern for the potential harm done to banking institutions if their internal affairs are made public to competitors and to the general public. Bank of America National Trust & Savings Association v. Douglas, 1939, 70 App.D.C. 221, 105 F.2d 100, 123 A.L.R. 1266; Overby v. United States Fidelity & Guaranty Co., 5 Cir., 1955, 224 F.2d 158.

(2) Those cases emphasizing the inviolability of the "internal workings" of an administrative agency. United States v. Morgan, 1941, 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429; Kaiser Aluminum & Chemical Corp. v. United States, 1958, 157 F.Supp. 939, 141 Ct.Cl. 38.

■ Since the plaintiff in the present case has stated in oral argument that it is not interested in any parts of the documents involving the affairs of other banking institutions, the doctrine pronounced by the first category of cases is not applicable to the present case.

The cases cited by the Comptroller falling within the second category above also are not applicable to the facts and issues in the present case principally because it would be anomalous to permit a plaintiff to attack the discretionary act of the Comptroller because of alleged abuse of discretion and arbitrariness and at the same time prevent such plaintiff from discovering the basis for the Comptroller's action.

The court is, therefore, of the opinion that a limited production of the documents in issue would not be barred by any established principle of privilege if the issue of abuse of discretion were properly before the court.

Pursuant to the conclusions reached in the first part of this opinion, the motion for production of documents must be denied.

An appropriate Order may be submitted.