TRAVERSE CITY STATE BANK, a Michigan banking corporation, Plaintiff,

v.

The EMPIRE NATIONAL BANK, a national banking association, Defendant.

NATIONAL BANK AND TRUST COMPANY OF TRAVERSE CITY, a national banking corporation. Plaintiff.

v.

The EMPIRE NATIONAL BANK, a national banking corporation, and James J. Saxon, Comptroller of the Currency of the United States, Defendants.

Civ. A. Nos. 4036, 4038.

United States District Court
W. D. Michigan, S. D.

May 1, 1964.

Murchie, Calcutt & Brown, Traverse City, Mich., Dickinson, Wright, McKean & Cudlip, Detroit, Mich., Robert B. Murchie, Traverse City, Mich., Robert E. McKean, Detroit, Mich., of counsel, for plaintiff Travis City State Bank.

Running & Wise, Traverse City, Mich., Dickinson, Wright, McKean & Cudlip, Detroit, Mich., Harry T. Running, Traverse City, Mich., Robert E. McKean, Detroit, Mich., of counsel, for plaintiff National Bank & Trust Co. of Traverse City.

Williams, Thompson & Coulter, Traverse City, Mich., Maxwell F. Badgley, Jackson, Mich., Fitch R. Williams and K. E. Thompson, Traverse City, Mich., of counsel, for defendant Empire Nat. Bank.

George E. Hill, U. S. Dist. Atty., H. David Soet, Asst. U. S. Dist. Atty., Grand Rapids, Mich., for defendant Comptroller.

FOX, District Judge.

These two cases were filed in February of 1961. Plaintiffs, in their complaints, pray for a declaration that the establishment and operation by the defendant Empire National Bank, of a banking office within or near Traverse City, Michigan, whether by change of location of its principal office, or otherwise, is unlawful. Plaintiffs also prayed for an injunction restraining the defendant bank from prosecuting its application for approval of such an office in Traverse City, and restraining the Comptroller of the Currency from issuing a certificate evidencing approval of the office.

The application for a preliminary injunction was denied on March 10, 1961, by then Chief Judge Raymond W. Starr.[1]

---

1. A portion of Judge Starr's opinion from the bench on March 10, 1961, is as follows:

"So far as appears before the Court, the Comptroller of the Currency has not yet issued permission and authority for the Empire National Bank to change the location of its main office to Traverse City. *Therefore, the question of the Empire National Bank's changing its*

Early in the proceedings, defendant Empire filed a motion to dismiss the actions.

Before the Court ruled on defendant Empire's motion to dismiss, the plaintiff filed a motion in National Bank and Trust Company of Traverse City v. The Empire National Bank to add the Comptroller of the Currency as a party defendant. After extensive briefing, oral arguments, and a hearing, the Court, on July 10, 1963, in its opinion filed on July 12, 1963, ordered that the Comptroller be joined as a party defendant.

The Comptroller subsequently filed a motion for a judgment on the pleadings. Defendant Empire's motion to dismiss in Traverse City State Bank v. The Empire National Bank and the Comptroller's motion for judgment on the pleadings in National Bank and Trust Company of Traverse City v. The Empire National Bank, were treated as one in the briefs of the parties and at oral argument, at the direction of the court, and these motions by agreement were treated as motions for Summary Judgment.

After deliberate consideration of the very excellent briefs and arguments in the case, this Court concludes there is no genuine dispute as to any material issue of fact, and that the respective motions of the Comptroller and the defendant bank must be granted. Findings of fact and conclusions of law in support of this judgment are hereafter set forth.

Plaintiff National Bank and Trust Company of Traverse City is a national banking association having its principal office in the City of Traverse City, Michigan. Plaintiff Traverse City State Bank is a Michigan banking corporation, having its principal office in the City of Traverse City, Michigan.

Defendant, The Empire National Bank, is a national banking association, having its principal office in the City of Traverse City, Michigan. Defendant James J. Saxon is the Comptroller of the Currency of the United States.

Before February 15, 1961, the defendant, The Empire National Bank, was a Michigan banking corporation with the name "Empire State Bank" and with its principal office in the Village of Empire, Michigan.

On July 14, 1958, the defendant bank, then a Michigan banking corporation, filed an application with the Commissioner of the State Banking Department of Michigan for permission to move its main office from the Village of Empire

location is before the Comptroller of the Currency, and the Comptroller of the Currency, in the exercise of his discretion, must determine whether or not that bank should be granted permission and authority to change its location.

"I am not holding nor determining that the ultimate decision of the Comptroller of the Currency authorizing a change of location would not be reviewable in court. I am not passing upon that question.

"It is perfectly clear that to grant the prayer of the plaintiff in each suit for a preliminary injunction enjoining The Empire National Bank from maintaining or prosecuting its application to change its location filed prior to the beginning of these suits, would in effect enjoin the Comptroller from considering and determining the application of the Empire Bank to change its location. The granting to a national bank of authority to change its location is primarily a matter within the discretion and determination of the Comptroller of the Currency.

Whether or not the Comptroller's determination and order may be reviewed in a court proceedings is not determined by this Court at this time, as that question is not before this Court at this time. As the Comptroller is not a party to this action, the Court should not directly or indirectly enjoin him from considering the application of the Empire National Bank to change its location.

"From consideration of all the facts and circumstances now before the Court in the present actions, and from consideration of the many applicable authorities, the Court is convinced that as the Comptroller is not a party to this action, the preliminary injunction requested by each of the plaintiffs in the pending actions should not be granted at this time. In my opinion, the defendant Empire National Bank has shown just cause why the preliminary injunctions should not be granted at this time. An order will be entered denying the prayer of each of the plaintiffs for a preliminary injunction." (Emphasis supplied.)

to a point just north of Traverse City, and a month later it applied to the State Banking Commissioner for permission to establish a branch office in Empire.

The State Banking Commissioner did not pass on either application, but he did issue a certificate of authority permitting the defendant bank to establish a branch office at the location where it desired to move its principal office. The defendant bank thereafter established this branch office on August 17, 1959.

On August 24, 1959, the Traverse City State Bank and the First Peoples State Bank (now National Bank and Trust Company of Traverse City, plaintiff in this suit) brought suit under Section 23.739 of the Michigan Statutes Annotated,[2] in the Circuit Court for the County of Ingham. This statute provides for judicial review of any decision by the State Banking Commissioner.

In a decree filed June 29, 1960, the Circuit Court for the County of Ingham overruled the Commissioner by holding that there was no "necessity" for the new branch. Section 23.762 of the Michigan Statutes Annotated provides that a new branch office shall not be approved unless there is "necessity for the establishment of such branch." [3]

Before February 15, 1961, defendant Empire State Bank filed an application for approval of the Comptroller of the

2. "§ 23.739 Suits and proceedings; venue; chancery jurisdiction to vacate orders of commissioner; procedure; appeal; suspension of order.] Sec. 21. Proceedings brought by or against the commissioner under this act may be brought in the circuit court for the county of Ingham, or in the circuit court of the county in which the institution is located.

"Any financial institution under this act, or officer or director thereof or any party of interest therein, being dissatisfied with any rule, regulation, order, demand, ruling or finding (hereinafter in this section referred to as an order) whatsoever, made by the commissioner, may commence an action in the circuit court in chancery for the county in which said financial institution is located or in the circuit court in chancery for the county of Ingham against the commissioner as defendant to vacate and set aside such order on the ground that the same is unlawful or unreasonable, or that any regulation or practice fixed in such order is unlawful or unreasonable. The practice and procedure for service of process, to bring the suit to trial, and the rules of evidence on the trial thereof, shall be the same as in other chancery actions except that all suits brought under this section shall have precedence over any civil cause of a different nature pending in such court. Service of a copy of the summons issued in such matter upon the commissioner or any of his deputies within the time in such summons limited shall be sufficient service upon the commission. The said circuit courts in chancery are hereby given jurisdiction of such suits and empowered to affirm, modify, vacate, or set aside the order of the commissioner in whole or in part and to make such other order or decree as the court shall decide to be proper and in accordance with the facts and the law. Any party shall have the right to appeal from such decree to the supreme court in the same manner as from other chancery suits.

"The filing of such action shall operate to suspend the order of the commissioner with respect to parties plaintiff therein unless the court on order to show cause shall determine that such order should be observed pending the hearing on said action." (C.L. '48 § 487.21).

3. "§ 23.762] Same; branches. Sec. 34. Any bank having a capital of at least $50,000.00 may, with the written approval of the commission, establish and operate a branch or branches within a village or city other than that in which it was originally chartered: Provided, That the village or city in which it is proposed to establish and operate a branch is located in the same county in which the parent bank has its principal office or, if not in said county, then within 25 miles of said parent bank or in a contiguous county at a point more than 25 miles from the parent bank, if such county has no bank: Provided further, That no such branch shall be established in a city or village in which a state or national bank or branch thereof is then in operation: Provided further, That the commission shall not grant such approval unless the parent bank has capital and surplus in an amount at least equal to the aggregate minimum capital and surplus, respectively, required for the establishment of a bank in each of the various places where such bank and its branches are to be located and unless the commis-

Currency to be converted into a national banking association. Defendant also sought to have its chosen name, The Empire National Bank, approved by the Comptroller. 12 U.S.C.A. § 35.

On February 15, 1961, the conversion from Empire State Bank to The Empire National Bank was approved by the then Comptroller of the Currency, Ray M. Gidney.

On February 16, 1961, defendant Empire National Bank made application to the Comptroller of the Currency pursuant to 12 U.S.C.A. § 30, for approval of the Comptroller to change the location of its main office from Empire, Michigan, to Traverse City, Michigan, which is within a distance of thirty miles from Empire, Michigan.

At the same time, defendant bank made application to operate its then main office in the Village of Empire as a branch, pursuant to 12 U.S.C.A. § 36.

Application was also made for approval of a change in the name of defendant from The Empire National Bank to Empire National Bank of Traverse City.

On June 27, 1961, Comptroller Gidney issued a certificate approving the change in defendant bank's name, and approving a change in the location of the main office to Traverse City. The Comptroller also issued a certificate authorizing the continuance of defendant bank's operation in Empire as a branch. Defendant bank has been operating its main office in Traverse City since that time.

On February 21 and 24, 1961, these plaintiffs instituted the present action, seeking the relief set out above.

In granting the request for change of location of defendant bank, the Comp-

troller was necessarily acting pursuant to Title 12 U.S.C.A. § 30:

"Any national banking association, with the approval of the Comptroller of the Currency, may change its name or change the location of the main office of such association within the limits of the city, town, or village in which it is situated. *Any national banking association, with the approval of the Comptroller of the Currency, may change the location of the main office of such association to any other location outside the limits of the city, town, or village in which it is located, but not more than thirty miles distant,* by the vote of shareholders owning two-thirds of the stock of such association. A duly authenticated notice of the vote and of the new name or location selected shall be sent to the Comptroller of the Currency; but no change of name or location shall be valid until the Comptroller shall have issued his certificate of approval of the same." (Emphasis supplied.)

On February 15, 1961, defendant became a national bank, subject to the federal laws, rules and regulations, and to the administrative control of the Comptroller of the Currency. On that date the Comptroller of the Currency certified defendant had complied with all statutory requirements of the National Banking Act essential to convert into a national banking association. From that time forward defendant bank "and all its stockholders, officers, and employees * * * [had] the same powers and privileges, and * * * [were] subject to the same duties, lia-

---

sion is satisfied as to the sufficiency of the capital and surplus of the bank, *the necessity for the establishment of such branch* or branches and the prospects of successful operation if established.

"Any bank may, with the written approval of the commission, establish and operate a branch or branches within the limits of the city or village in which said bank is located: Provided, That the

commission is satisfied as to the necessity for the establishment of such branch and the prospects of successful operation if established. No branch of any such bank shall be moved from 1 location to another within the same city or village without the written approval of the commission." (C.L. '48, § 487.34). (Emphasis supplied.)

bilities, and regulations, in all respects, * * * [which had] been prescribed by the Federal Reserve Act and the National Banking Act *for associations originally organized as national banking associations."* 12 U.S.C.A. § 35. (Emphasis supplied.)

An analysis of the briefs of the parties and the record in this case demonstrates that the primary, essential challenge by the plaintiffs is that the move of The Empire National Bank to Traverse City in this suit is foreclosed and illegal because it is contrary to the decision of the Circuit Court for Ingham County discussed above, which held that there was no necessity for a new banking facility in Traverse City.

Plaintiffs claim the decision of the Ingham County Circuit Court is res judicata in the instant case, or that defendant bank and the Comptroller are equitably estopped by that decision.

■ The state circuit court's decision interpreted the state law applicable to a state bank, and the exercise of discretion by the State Banking Commissioner under the state branch banking law. When defendant bank was fully converted from a state banking association to a national banking association, it ceased to be subject to state banking laws and the state banking commissioner insofar as they relate to the administration of the defendant as a banking association.

Plaintiffs cite Michigan Statutes Annotated 23.866, Comp.Laws Supp.1956, § 487.113 in support of their contention, which reads in part as follows: " * * * and the national banking association shall be deemed to be a continuation of the entity and of the identity of the state bank."

■■ This statute cannot be interpreted so as to supersede or interfere with the administrative control or powers of the Comptroller of the Currency over national banks as provided in the National Banking Acts. Clearly, the intent and purport of Michigan Statutes Annotated 23.866 is to impose upon the converted national bank the continuing duty to discharge all of its obligations in its fiduciary and banking capacity to the public generally, and specifically to its customers, depositors and those with whom it has entered into contractual relationships or any relationships enforceable under the law.[4]

---

4. "§ 23.866 Conversion of state bank into a national banking association.] Sec. 113. Any bank, upon the affirmative votes of the shareholders representing ⅔ of the total number of shares of each class of its outstanding capital stock, may be converted under the laws of the United States of America into a national banking association: Provided, however, That such conversion of a state bank into a national banking association shall not release such bank from its obligations to pay and discharge all the liabilities created by law or incurred by it before becoming a national banking association, or any tax imposed by the laws of this state up to the date of its becoming a national banking association in proportion to the time which has elapsed since the last preceding payment therefor, or any assessment, penalty, or forfeiture imposed or incurred under the laws of this state up to the date of its becoming a national banking association. No such conversion shall be made to defeat or defraud any of the creditors of either bank.

"Certified copies of all proceedings had by the directors and shareholders of such bank shall be filed with the commission, in triplicate, and in addition, the bank shall furnish a certified copy of consent or approval of the comptroller of the currency to the conversion if such consent or approval is required by the national bank laws. One copy of said proceedings shall be filed in the office of the department, and the commission shall certify and forward by registered mail 1 copy of the proceedings to the county clerk of the county in which such converted bank is located and 1 to the Michigan corporation and securities commission.

"When such conversion becomes effective, all the property of the state bank including all its right, title, and interest in and to all property of whatsoever kind, whether real, personal, or mixed, and things in action, and every right, privilege, interest, and asset of any conceivable

It is the plaintiffs' claim that 12 U.S. C.A. § 30 casts a burden upon the Comptroller to make a finding of "necessity" before he can grant approval of a relocation of defendant bank's main office, and that if this is the case, the Comptroller of the Currency is bound by the determination of the Circuit Court for Ingham County.

Title 12 U.S.C.A. § 30 does not oblige the Comptroller to first find "necessity" before he approves relocation of a national banking association's main office. The statute is silent on the finding of "necessity" as a condition precedent to his approval of a national bank's main office move.

The language of the statute makes the move dependent only upon "approval" by the Comptroller and a vote of two-thirds of the shareholders of the national bank.

▬▬▬ The state court's decision in the Ingham County Circuit Court case

which interprets a state statute regulating a state banking association cannot control the federal statutory discretion given to the Comptroller of the Currency in his administration and regulation of national banking associations; excepting, however, only insofar as Congress has by express permission provided in the National Banking Act.

Plaintiffs also have argued that the Comptroller's regulations in force at all times pertinent to this action demand a finding of "necessity." C.F.R. Title 12, Chap. 1, Part 4 (January 1, 1963).

Plaintiffs predicate their conclusion upon the fact that 12 C.F.R. 4.7 directs that applications for a relocation of a national banking association's main office shall be processed in the same manner as an application for a change in the capital structure of a national banking association.

Then, plaintiffs show the regulations for changes in capital require that ap-

value or benefit then existing, belonging, or pertaining to it, or which would inure to it, shall immediately by act of law and without any conveyance or transfer, and without any further act or deed, be vested in and become the property of the national banking association, which shall have, hold, and enjoy the same in its own right as fully and to the same extent as the same was possessed, held, and enjoyed by the state bank; and the national banking association shall be deemed to be a continuation of the entity and of the identity of the state bank. All the rights, obligations, and relations of the state bank to or in respect to any person, estate, creditor, depositor, trustee, or beneficiary of any trust, and in, or in respect to, any executorship or trusteeship or any other trust or fiduciary function, shall remain unimpaired; and the national banking association shall succeed to all such rights, obligations, relations, and trusts, and the duties and liabilities connected therewith, and shall execute and perform each and every such trust and relation in the same manner as if the national banking association had itself assumed the trust or relation and the obligations and liabilities connected therewith. If the state bank is acting as administrator, coadministrator, executor, coexecutor, trustee or

cotrustee of or in respect to any estate or trust being administered under the laws of this state, such relation, as well as any other or similar fiduciary relations, and all rights, privileges, duties, and obligations connected therewith shall remain unimpaired and shall continue into and in the national banking association from and as of the time of taking effect of the conversion, irrespective of the date when any such relation may have been created or established and irrespective of the date of any trust agreement relating thereto or the date of the death of any testator or decedent whose estate is being so administered. Nothing done in connection with the conversion of a state bank into a national banking association shall, in respect to any such executorship, trusteeship, or similar fiduciary relation, be deemed to be or to effect under the laws of this state a renunciation or revocation of any letters of administration or letters testamentary pertaining to such relation, nor a removal or resignation from any such executorship or trusteeship or other fiduciary relationship, nor shall the same be deemed to be of the same effect as if the executor or trustee or other fiduciary had died or otherwise become incompetent to act."

plications for changes in capital be processed in the same manner as applications for new charters. 12 C.F.R. 4.6. Finally, applications for new charters involve an investigation into the "convenience and needs of the community."

While these regulations set up the procedure for applications relating to a relocation of a national banking association's main office, change in capital, and new charters, they do not affect the substantive requirements which govern a change in location of the bank's main office. Those are controlled by statute, 12 U.S.C.A. § 30.

The essence of plaintiffs' claim is that the Comptroller is not to act arbitrarily or capriciously. However, this does not mean that the Comptroller, in his expertize, may not differ from the conclusions of the Circuit Court for the County of Ingham.

Parenthetically, it may be noted that the Comptroller and the State Banking Commissioner seem to agree insofar as the State Banking Commissioner approved a move of the defendant bank into the Traverse City area.

In this court's judgment, Title 12 U.S. C.A. § 30 vests the Comptroller with broad discretion to approve relocation of national banking associations limited only by the provisions of Section 30. His actions, nevertheless, must not be arbitrary nor capricious. Community National Bank of Pontiac v. Gidney, 192 F.Supp. 514 (E.D.Mich.1961) affirmed Community National Bank of Pontiac v. Saxon, 310 F.2d 224 (CCA 6, 1962).

The District Court in Community National Bank of Pontiac v. Gidney, had before it the question of judicial review of the Comptroller's administrative action. One of the ultimate issues was whether or not the Comptroller abused his discretion in authorizing a branch bank.

The court in the Pontiac case was of the opinion that the Administrative Procedure Act, 5 U.S.C.A. § 1009, controlled judicial review of the Comptroller, and it further found that there was no review where "agency action is by law committed to agency discretion." 5 U.S.C.A. § 1009.

The court then stated:

" * * * this court is of the opinion that Congress intended that the Comptroller have an exclusive and unreviewable power of discretion in determining whether or not to approve the establishment of branch banks pursuant to 12 U.S.C.A. § 36(c). The court, therefore, is further of the opinion that the discretion provided for in 12 U.S.C.A. § 36(c) comes within the second exception to Section 10 of the Administrative Procedure Act and that this court is without jurisdiction to review the action of the Comptroller in the present case." Page 519 of 192 F.Supp.

The same case came before the Circuit Court of Appeals *sub nom.* Community National Bank of Pontiac v. Saxon, 310 F.2d 224 (CCA 6, 1962). After pointing out that the action was based upon the provisions of 12 U.S.C.A. § 36(c), the branch banking statute, which is not the statute involved in the present case, the Circuit Court noted the District Court had modified its initial ruling as follows:

" * * * the (district) Court holds that the issue of whether or not the area in question is a village under Michigan law cannot be determined by this (district) court de novo; and that the precise question then is whether the action necessarily taken by the Comptroller was arbitrary or capricious." At page 225 of 310 F.2d.

The Circuit Court states the District Court then held that the acts of the Comptroller were not arbitrary or capricious, 310 F.2d at page 226. The Circuit Court affirmed.

The Circuit Court stated:

"We are of the opinion that the scope of review of the District Court

is limited by the terms of the Administrative Procedure Act and that its finding that the decision of the Comptroller was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, is amply supported by the evidence." At page 227 of 310 F.2d.

We take this statement by the Court of Appeals to mean that the scope of inquiry by this district court in the present action is whether or not the Comptroller acted arbitrarily, capriciously, or abused his discretion.

While the Pontiac cases involved the branch banking statute, the court's ruling is pertinent, since it treats definitively of the discretion of the Comptroller.[5]

This court finds on the facts presented by the pleadings and record in this case that the Comptroller did not act arbitrarily, capriciously, or abusively, but he acted in accordance with law.

There is a substantial difference between the national banking act relating to the relocation of main offices and the state law relating to the relocation of state bank main offices. Compare 12 U.S.C.A. § 30 with M.S.A. 23.767, Comp. Laws 1948, § 487.39.[6]

For example, the state law provides that a state bank's main office can be moved anywhere within the state, with the State Banking Commissioner's approval. The defendant bank gave up this right when it converted into a national bank. It was apparently the intent of Congress *not* to limit the relocation of main offices of national banking associations by reference to state banking laws, since there is no such limitation. 12 U.S.C.A. § 30.

If we were to hold, as plaintiffs urge us to do, we would write into Section 30 of the National Banking Act that which Congress decided not to include in the Act. This court would thus be legislating and usurping the powers of Congress.

On the other hand, Congress has specifically provided under Section 36, the national branch banking statute, as follows:

"\* \* \*

"(c) A national banking association may, with the approval of the Comptroller of the Currency, establish and operate new branches: \* \* \*; and (2) at any point within the State in which said association is situated, *if such establish-*

5. The branch banking statute of the National Bank Act, 12 U.S.C.A. § 36 has two aspects: first, it refers to the state provisions on branch banking; secondly, it requires the approval of the Comptroller. The court's discussion of discretion in the Pontiac cases necessarily goes to the element of approval; this court is concerned with that element as found in 12 U.S.C.A. § 30.

6. "§ 30. Change of name or location "Any national banking association, with the approval of the Comptroller of the Currency, may change its name or change the location of the main office of such association within the limits of the city, town, or village in which it is situated. Any national banking association, with the approval of the Comptroller of the Currency, may change the location of the main office of such association to any other location outside the limits of the city, town, or village in which it is lo-

cated, but not more, than thirty miles distant, by the vote of shareholders owning two-thirds of the stock of such association. A duly authenticated notice of the vote and of the new name or location selected shall be sent to the Comptroller of the Currency; but no change of name or location shall be valid until the Comptroller shall have issued his certificate of approval of the same."
"§ 23.767. Change of location of bank, procedure.] Sec. 39. Any bank may amend its articles of incorporation in the manner set forth hereinafter in section ninety-eight [98] to provide for a change in the place where its operations are carried on to any other place within the state: Provided, That the bank in its new location shall meet the requirements of this act for the establishment of a bank in that location. When the bank has so amended its articles, the commission shall issue to the bank a certificate of change of location."

*ment and operation are at the time authorized to State banks by the statute law* of the State in question by language specifically granting such authority affirmatively and not merely by implication or recognition, and subject to the restrictions as to location imposed by the law of the State on State banks." (Emphasis supplied.)

The specific difference is a compelling reason for us to refuse to interpret the national banking association's main office relocation statute as containing the same limitation as the branch banking statute.

The Comptroller undoubtedly is faced with problems in a decision concerning the relocation of a main office which do not appear in the establishment of a branch bank; and in this area, "[t]he Comptroller must necessarily utilize his great expert knowledge and consider questions of policy, as well as of fact, with respect to the interest of the public"; Community National Bank of Pontiac v. Gidney, supra, 192 F.Supp. page 518. Absent any limitations in the relocation statute, the Comptroller is the expert named by Congress to make the decision.

Plaintiffs also point to the language of the Court in Camden Trust Company v. Gidney, 112 U.S.App.D.C. 197, 301 F.2d 521 (1962) where it stated in *dictum* that the Comptroller in that case had properly turned down an application for relocation of a main office. This court does not feel dictum is entitled to much weight in view of the different facts involved in the Camden case.

From an affidavit filed in this case by the Comptroller, it appears that relocation of the main office in the Camden case would have left a *branch bank,* the

original main office, in a location where another bank had a branch; this clearly would have violated 12 U.S.C.A. § 36(c), and in itself justified the dictum of the court; but there is no such result in this case.[7] The resulting branch bank in Empire has not been challenged.

The very recent case of Whitney National Bank v. Bank of New Orleans and Trust Company, 323 F.2d 290 (Cir. D.C. 1963) is clearly distinguishable on its facts; in addition, it too involves the branch banking statute, 12 U.S.C.A. § 36(c), and not the relocation statute, 12 U.S.C.A. § 30.

A motion for summary judgment should not be granted unless there is no genuine issue as to any material fact, and unless the proponent is entitled to a judgment as a matter of law.

This court finds no genuine dispute as to any material fact. The statute controlling the relocation of the main office of a national bank calls for the approval of the Comptroller, 12 U.S.C.A. § 30. The Comptroller of the Currency did approve the request for relocation of the defendant *national bank's* main office from Empire to Traverse City, which is within the thirty mile limitation of Section 30.

Since Section 30 does not require a finding of necessity, the Ingham County State of Michigan Circuit Court's findings are irrelevant. The Comptroller had acted according to law, and, therefore, the Comptroller and the defendant *national bank* are entitled to have their motions granted.

The Comptroller and the defendant national bank shall draft a proposed judgment for the court's consideration in accordance with this opinion.

7. The affidavit of the Comptroller was filed with this court as part of the Comptroller's Supplemental Memorandum in support of his motion for judgment on the pleadings.