IN THE MATTER OF THE APPLICATION OF BERKELEY SAVINGS AND LOAN ASSOCIATION FOR THE COMMISSIONER'S APPROVAL OF RELOCATION OF BERKELEY MAIN OFFICE FROM NEWARK TO MILLBURN, NEW JERSEY.

INVESTORS SAVINGS & LOAN ASSOCIATION, APPELLANT, v. JAMES C. BRADY, JR., COMMISSIONER OF BANKING OF NEW JERSEY AND THE BERKELEY SAVINGS AND LOAN ASSOCIATION OF NEWARK, NEW JERSEY, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued June 2, 1971—Decided June 30, 1971.

Before Judges KILKENNY, HALPERN and LANE.

*Mr. Vincent D. Manahan, III,* argued the cause for appellant (*Messrs. Herrigel, Bolan & Herrigel,* attorneys).

*Mr. Martin S. Fox* argued the cause for respondent The Berkeley Savings and Loan Association of Newark, New Jersey (*Messrs. Fox & Fox,* attorneys).

Statement in lieu of brief on behalf of respondent James C. Brady, Jr., Commissioner of Banking of New Jersey. (*Mr. George F. Kugler, Jr.,* Attorney General of New Jersey, attorney; *Mr. T. Robert Zochowski,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

KILKENNY, P. J. A. D. On September 15, 1970 the State Commissioner of Banking approved a relocation of the principal office of The Berkeley Savings and Loan Association to Millburn, conditioned upon its relocation of a branch at the old site. Investors Savings and Loan Association (hereinafter "Investors") appeals from the final decision of the Commissioner.

Investors contends that (1) the procedure involved in reaching this determination constituted *in fact* the establishing of a *branch office* in Millburn which was proscribed under *N. J. S. A.* 17:12B–26, and (2) the application failed to meet the statutory prerequisites for principal office relocation under *N. J. S. A.* 17:12B–43.

The Berkeley Savings and Loan Association (hereinafter "Berkeley") was chartered in 1941 and began doing business in 1942 in the Weequahic section of Newark. Its total assets at that time were one million dollars.

In 1952 it moved its only office at that time to 88 Lyons Avenue in Newark; and in 1954 a branch office was opened by Berkeley on Chancellor Avenue, also in the Weequahic section of Newark. By 1961 the assets of Berkeley totaled $48 million and continued to increase until they amounted to $89 million at the time of this application.

With the change in the character of the Weequahic community during the 1950's and 1960's, the source of the assets began to shift from the residents of the Weequahic section to depositors from outside that area. By October 1969 less than 15% of the savings came from the area surrounding the Berkeley principal and branch offices. Many of the former customers had moved into the suburbs and numerous businesses in the area had found it economically unwise to remain.

Berkeley began to seek a suburban location. A suitable site was found in Millburn. $18 million in Berkeley's assets then flowed from the Millburn area, which contained only one other savings and loan association. It was determined by Berkeley to apply to make the Millburn site the location of its principal office. It would be advertised as such; principal officers would be transferred there; the board of directors would meet there, and orders would emanate from there. Upon approval of the relocation $9 million would be transferred to the Millburn office the first three years of operation.

However, Berkeley did not intend to abandon its Weequahic site. In 1968 it had purchased the assets of the Police Savings and Loan Association for relocation of the Lyons Avenue place of business as a branch office. In fact, the Commissioner's approval of relocation of the principal office was conditioned upon Berkeley's so doing.

Much testimony was taken concerning the feasibility of the relocation. Raymond Treasure testified on behalf of Berkeley, and submitted a feasibility report. He testified that homeownership was high in Millburn and there was a middle to upper income population. He found the primary trade area to have a 12,000 population. His report concluded that: (1) the relocation would be in the public interest; (2) it would be of benefit to the area; (3) there would be no undue injury to any existing association, and (4) the office would have a reasonable prospect of success.

Bruce Riddle testified on behalf of Investors. He concluded that Millburn had reached a saturation point as far as population growth and new home construction were concerned. He felt that the citizens of Millburn were adequately served by existing facilities.

Wilson Yulman testified for Investors as to a telephone study his corporation had conducted. This survey allegedly indicated that only a small percentage of the residents approached would be willing to switch accounts or open a new account at the Berkeley.

The Commissioner reviewed the evidence and specifically concluded that the application met the statutory prerequisites.

I

██ We find substantial evidence in the record to support the administrative finding that the statutory requirements were satisfied.

In order to qualify for a relocation under N. J. S. A. 17:12B–40, the Commissioner must find, in accordance with section 43, that

(a) the proposed change of location is in the public interest, and
(b) will be of benefit to the area to which it is proposed to remove such office, and
(c) that the removal of such office will not result in undue injury to any other association in the area to which it is proposed to remove such office, and
(d) the State association will have a reasonable prospect of success in the proposed new location.

Once these are found, the application shall be granted. In the instant case the Commissioner held that Berkeley had complied with these requirements.

The findings of the Commissioner should not be upset absent a showing that they were arbitrary, unreasonable, or capricious, or that they lacked substantial support in the evidence. In re Application of Montclair Savings Bank, 114 N. J. Super. 196, 199 (App. Div. 1971). Due regard must

be given to the expertise of the administrative agency regarding its review of the marketing data and determination of the economic feasibility of the proposed bank. *In re Application of Kenilworth State Bank,* 49 *N. J.* 330, 334 (1967).

In the instant case there was minimal dispute as to the material facts. The experts agreed as to the primary service area and the deposit potential. The reasoning of the Commissioner as to the effect of Berkeley's entrance into this area is supported by substantial credible evidence and certainly not arbitrary.

## II

 Investors next contends that the relocation was barred by the "home office" protection rule set forth in *N. J. S. A.* 17:12B–26(c). It argues that, although the application is phrased in terms of section 40, it is not *in fact* a principal office relocation at all but a *de novo* branch application. Thus, it maintains the application would be barred by the "home office" protection of section 26(c). Investors notes that a large portion of Berkeley's deposits would remain in Newark, and Newark would remain for a few years the center of its deposit flow. From these facts it argues that granting the application would amount to condoning a maneuver contrary to the intent of the act.

*N. J. S. A.* 17:12B–26(c) provides that a savings and loan association may establish a *branch office* "where, at the date of the application, there is no *principal office* of any other association in operation at the time it is proposed to establish such branch office * * *." Since Investors has its *principal* office in Millburn, Berkeley could not establish a *branch* there. Investors contends that Berkeley is attempting to achieve indirectly what it cannot do directly and should be barred from doing so.

In *In re Princeton Bank and Trust Co.,* 87 *N. J. Super.* 247 (App. Div. 1965), the petitioner bank had its main office in Princeton with a branch in Princeton Township.

With the opening of a shopping center in the township, the bank deemed it in its best interests to open a second branch at the shopping center. However, they were barred from establishing the second branch because of the existence of a banking office in the township. In an attempt to solve the dilemma, they applied for and were granted an interchange of their main and branch offices, and thus purported to move the "main" office to the township. Then, no longer barred by "home office" protection because of a main office in the township, it applied for a branch at the shopping center. The grant was allowed but this court noted that the maneuver was an admitted attempt to circumvent the statute. We reversed the grant of the second branch, stating: "What Trust Company could not do directly, it sought to do indirectly. The Banking Act * * * cannot be used to that end." *Id.* at 261.

What was crucial to the decision in that case was the finding that Princeton never intended to make a *bona fide* interchange of its principal office with its township branch, but merely a paper change to permit it to open the branch at the shopping center. *Id.* at 259.

Although the case at bar deals with a separate act, referring to savings and loan associations, it is reasonable to apply a similar rationale. If the plan of Berkeley was not a *bona fide* relocation of its principal office, but merely an attempt to stretch out its arms into a lucrative area, we would follow the rationale of the *Princeton* case, *supra*.

The major difficulty in cases such as this is in drawing the distinction between the "principal" office and the "branch." *Cf. Ramapo v. Camp*, 425 *F.* 2d 333 (3 Cir. 1970), *cert.* den. 400 *U. S.* 828, 91 *S. Ct.* 57, 27 *L. Ed.* 2d 58 (1971). Would Berkeley's operation intended for Millburn amount to a *bona fide* "principal" office? That is the question.

In *Ramapo*, Prospect Park National Bank (PPNB) made application to the Comptroller of the Currency to relocate its principal office from Prospect Park to Wayne pursuant

to 12 *U. S. C.* § 30, which provides that a national bank may relocate its main office within 30 miles of the present site. A concurrent application was made to open a branch at the Prospect Park site. The reason for the application was to relieve overcrowding at the present office; to serve customers who were moving to areas such as Wayne, and to move the bank from an area of declining population and economy into a rapidly developing community.

It was argued that PPNB was merely opening a branch in Wayne and thus achieving through "subterfuge" what was prohibited by both New Jersey and federal law. However, the Court of Appeals accepted the District Court's finding that the relocation was *bona fide.* Since this was so, the new location was not a branch and the court found it unnecessary to consider the operation of the New Jersey Bank Act through 12 *U. S. C.* § 36(c). The court held that the differentiation between the "main" office does not rest upon the mass transfer of customer accounts or deposit moneys, nor upon the fact that the "service area" of the old site will continue to be many times greater than that of the new. See also, *in accord, Traverse City State Bank v. Empire National Bank,* 228 *F. Supp.* 984 (W. D. Mich. 1964).

In the instant case, the Commissioner has specifically found that the Millburn site would be the "principal" office. He set forth a list of the criteria considered by him in making the determination, to wit:

(a) The office with the highest volume of accounts; (b) the office with the highest volume of loans; (c) the office at which the board of directors regularly meet; (d) the office where the greatest number of senior officers are permanently located; (e) the office to which reports are made and orders emanate; (f) the office which is officially designated as the principal office; (g) the office which is known to the public as the principal office; (h) the office where a majority of the key departments are; (i) the office where the payroll and bookkeeping records are kept.

The Commissioner concluded that Berkeley's application satisfied these tests. His findings were reasonable and supportable by substantial credible evidence. We find no valid basis for disturbing the result. *In re Application of State Bank of Plainfield,* 61 *N. J. Super.* 150, 158 (App. Div. 1960).

The decision and order of the Commissioner of Banking is affirmed.