310 F.2d 224
 COMMUNITY NATIONAL BANK OF PONTIAC, a National Banking
Association, Plaintiff-Appellant,
v.
James J. SAXON, as Comptroller of the Currency of the United
States, and Manufacturers National Bank of
Detroit, a National Banking Association,
Defendants-Appellees.
 No. 14876.
 United States Court of Appeals Sixth Circuit.
 Nov. 26, 1962.
 
 1
 Frank M. Wiseman, Detroit, Mich. (Lawrence I. Levi, Orville J. Thill, Herbert V. Rollins, Detroit, Mich., Clarence K. Patterson, Pontiac, Mich., on the brief), for appellant.
 
 
 2
 Pauline B. Heller, Atty., Dept. of Justice, Washington, D.C. (Joseph D. Guilfoyle, Acting Asst. Atty. Gen., John G. Laughlin, Atty., Dept. of Justice, Washington, D.C., Lawrence Guhow, U.S. Atty., Detroit, Mich., on the brief), for Comptroller of the Currency.
 
 
 3
 Henry C. Bogle, Detroit, Mich. (Carson C. Grunewald, Bodman, Longley, Bogle, Armstrong & Dahling, Detroit, Mich., on the brief), for Manufacturers Nat. Bank of Detroit.
 
 
 4
 Before CECIL, Chief Judge, WEICK, Circuit Judge, and WILLIAM E. MILLER, District Judge.
 
 
 5
 WILLIAM E. MILLER, District Judge.
 
 
 6
 On May 12. 1959, Manufacturers National Bank of Detroit, Michigan (hereinafter referred to as 'Manufacturers Bank'), made written application to the Comptroller of the Currency of the United States (hereinafter referred to as the 'Comptroller') for permission to establish a branch office in the vicinity of Woodward Avenue and Big Beaver Road, Bloomfield Township, Oakland County, Michigan. On August 3, 1959, the Comptroller, after conducting the usual investigation concerning the legality and necessity of the branch, approved the application, and on August 10, 1959, issued a certificate evidencing his approval. The branch was thereupon opened at 1012-1016 North Hunter Boulevard. This location is in an unincorporated area and about two miles from a branch office of Community National Bank of Pontiac, Michigan, in the adjacent city of Bloomfield Hills.
 
 
 7
 On September 4. 1959, Community National Bank of Pontiac, Michigan (hereinafter referred to as the 'Pontiac Bank') filed suit against Manufacturers Bank and the Comptroller, alleging that the Comptroller's approval of the branch, and the establishment and operation thereof by Manufacturers Bank, were in violation of provisions of the National Bank Act governing the establishment and operation of branches of national banks and the authority of the Comptroller with respect thereto, and praying for mandatory and injunctive relief requiring the Comptroller to revoke the certificate of approval and restraining Manufacturers Bank from further maintaining and operating the branch.
 
 
 8
 The District Court, after extensive hearings and disposition of numerous motions, dismissed the action, and plaintiff-appellant, the Pontiac Bank, appealed.
 
 
 9
 Under the applicable section of the National Bank Act (12 U.S.C. 36(c)) a national banking association may, with the approval of the Comptroller, establish and operate branches only at such places within the state in which the bank is located as are expressly authorized for state banks by the law of the state in question, '* * * and subject to the restrictions as to location imposed by the law of the State on State banks.' The law of Michigan (17 M.S.A. 23.762 Comp.Laws 1948, 487.34) limits the establishment of a branch state bank to a location '* * * within a village or city * * *' and if the village or city be other than that in which the bank was orginally chartered, to a village or city in which no state or national bank or branch thereof is in operation.
 
 
 10
 The District Court first held, in passing upon plaintiff's motion for production of documents, that the National Bank Act vested the Comptroller with exclusive and unreviewable power of discretion to determine whether or not to approve the establishment of banks pursuant to 12 U.S.C. 36(c) and that the Court was without jurisdiction to review the action of the Comptroller in the present case. Subsequently, in passing upon other motions, the Court modified its initial holding, and stated:
 
 
 11
 'Considering the precise question before the Court on this motion, the Court holds that the issue of whether or not the area in question is a village under Michigan law cannot be determined by this court de novo; and that the precise question then is whether the action necessarily taken by the comptroller was arbitrary or capricious.'
 
 
 12
 In its final decision, delivered orally from the bench, the Court stated:
 
 
 13
 'The Court held, on that issue, as I have already mentioned, that the decision of the Comptroller was reviewable under Section 1009, Title 5, United States Code, a part of the Administrative procedures Act.
 
 
 14
 'In event of error on the part of this court in reaching the decision with respect to the review of the decision of the comptroller of the Currency, I feel obliged to decide two principal issues:
 
 
 15
 '(1) Is the unincorporated area in question an unincorporated village under Michigan law?
 
 
 16
 '(2) Was the decision of the Comptroller of the Currency on that issue arbitrary, capricious, an abuse of discretion, or not otherwise in accordance with law, pursuant to the scope of review under sec. 1009, Title 5, United States Code, being, more specifically, subdivision (e)(B)-(1) of that section?'On these two issues the Court found and concluded (1) 'that the area in question is not a village within the meaning of that term as used in Sec. 23.762, Michigan Statutes Annotated,' and (2) 'that the decision of the Comptroller was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, under the language of Section 1009, Title 5, United States Code, and the meaning and scope of that statutory language.'
 
 
 17
 Appellant's contentions are, inter alia, that the site of the branch-- 1012-1016 North Hunter Boulevard, Bloomfield Township, Oakland County, michigan-- is not within a 'village' within the meaning of that term as used in the Michigan statute and, hence, the Comptroller's approval of the branch at that location and the establishment and operation thereof by Manufacturers Bank are unlawful; that the district court should have decided the 'village' issued de novo; and that the district court, having found that the area was not a 'village,' should have given effect to such finding by holding appellees' acts unlawful and granting appellant relief.
 
 
 18
 While a number of questions have been presented, the only one we need consider is whether the district court erred in holding (1) that under the National Bank Act and the Administrative Procedure Act, the finding of the comptroller that the area in question is a village should not be overturned, if such finding is reasonable and based upon substantial grounds and is not arbitrary, capricious, or otherwise unlawful; and (2) that such finding by the Comptroller was not arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law.[1]
 
 
 19
 We have considered the record, briefs and oral argument and we find no error in the District Court's decision on these matters.
 
 
 20
 By the National Bank Act, Congress committed to the Comptroller the initial responsibility of determining whether the several conditions under which a national banking association may establish a branch are met. One of those conditions is that the proposed branch be within a 'village' or 'city.' The finding of the Comptroller that the area in question is a 'village' is essentially a finding of fact. Wyandotte Savings Bank v. State Banking Commissioner, 347 Mich. 33, 47, 78 N.W.2d 612. It is well settled that the decisions of executive officers on questions of fact are conclusive if reasonably supported by substantial evidence. Fahey v. O'Melveny & Myers, 200 F.2d 420, 472, 474, 477 (C.A. 9), certiorari denied, 345 U.S. 952; O'Leary v. Brown-Pacific-Maxon, 340 U.S. 504, 508, 71 S.Ct. 470, 95 L.Ed. 483; Securities & Exchange Comm. v. Chenery, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995; United States v. Pierce Auto Lines, 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821; N.L.R.B. v. Hearst Publications, 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170, rehearing denied, 322 U.S. 769, 64 S.Ct. 1148, 88 L.Ed. 1595; N.L.R.B. v. Link-Belt Co., 311 U.S. 584, 597, 61 S.Ct. 358, 85 L.Ed. 368; Bates & Guild Co. v. Payne, 194 U.S. 106, 108-109, 21 S.Ct. 595, 48 L.Ed. 894; Northwest Bancorporation v. Board of Governors of Federal Reserve System, 303 F.2d 832 (C.A. 8); Walker v. Altmeyer, 137 F.2d 531 (C.A. 2). See, also, United States v. Shimer, 367 U.S. 374, 381-382, 81 S.Ct. 1554, 6 L.Ed.2d 908; Noren v. Beck, 199 F.Supp. 708 (S.D.Cal.).
 
 
 21
 The District Court found and concluded, after an extensive hearing of evidence and a consideration of the applicable Michigan authorities, that the decision of the Comptroller was not 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' under the applicable language of the Administrative Procedure Act, 5 U.S.C. 1009.
 
 
 22
 We are of the opinion that the scope of review of the District Court is limited by the terms of the administrative Procedure Act and that its finding that the decision of the Comptroller was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, is amply supported by the evidence.
 
 
 23
 The Supreme Court of Michigan has thus defined the word 'village,' as used in the Michigan Act:
 
 
 24
 'The word 'village' is not a technical word, or one having a peculiar meaning, but is a common word in general usage with an ancient lineage. It is merely an assemblage or community of people, a nucleus or cluster for residential and business purposes, a collective body of inhabitants, gathered together in one group.' Wyandotte Savings Bank v. State Banking Commissioner, supra, 347 Mich. 33, 41, 78 N.W.2d 612, 617.
 
 
 25
 This definition was later amplified in Bank of Dearborn v. State Banking Commissioner, 365 Mich. 567, 571, 114 N.W.2d 210, 212, as follows:
 
 
 26
 'Its frame of reference in common usage is nebulous rather than exact, and is akin to 'vicinity,' 'neighborhood' and 'community.' * * * It is a settlement, a centralized populous area having a general common residential and business activity serving the particular area or district. It does not have to be a separate political entity or corporation. It is a 'locality' or 'area to be served.' It has been analyzed as a 'trading area' distinct from that assigned to 'municipality."
 
 
 27
 The area here under consideration comprised 1.18 square miles. In the area there were approximately 292 dwellings, 990 residents, 16 business establishments, a community center, a railroad station, and an office building with sixty tenants, including lawyers, doctors, dentists, realtors and other professional and business firms. While this area is not comparable in all respects to the areas involved in the Wyandotte and Bank of Dearborn cases, the definition of a village formulated by the decisions in those cases is very broad, and the Comptroller, upon the existing facts, was clearly warranted in finding that the applicable and controlling standards of Michigan law had been satisfied.
 
 
 28
 Finding no reversible error, we affirm the judgment of the District Court.
 
 
 
 [1]
 We find it unnecessary to consider the effect of the District Court's finding that the area was not a 'village.' This was clearly an alternative findings which the Court intended would become pertinent only in the event of a reversal of its decision that the Comptroller's determination should not be set aside unless it was arbitrary, an abuse of discretion, etc. It was apparently the Court's view that such alternative finding would obviate a remand for further proceedings, '* * * in the event of error on the part of (the) court in reaching the decision with respect to review of the decision of the Comptroller of the Currency.'