370 F.2d 381
 WEBSTER GROVES TRUST COMPANY, Appellant,
v.
James J. SAXON, Comptroller of the Currency of the United
States, and West Side National Bank, a National
Banking Association, Appellees.
 No. 18346.
 United States Court of Appeals Eighth Circuit.
 Dec. 14, 1966.
 
 Edwin S. Taylor, of Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., for appellant; Thomas V. Connelly, St. Louis, Mo., on the brief.
 David L. Rose, Attorney, Dept. of Justice, Washington, D.C., for appellee, James J. Saxon, Comptroller of Currency; John W. Douglas, Asst. Atty. Gen., and Jack H. Weiner, Attorney, Dept. of Justice, Washington, D.C., and Richard D. FitzGibbon, Jr., U.S. Atty., St. Louis, Mo., on the brief.
 William H. Biggs, of Biggs, Hensley, Curtis & Biggs, St. Louis, Mo., for appellee, West Side Nat. Bank.
 Before VOGEL, Chief Judge, GIBSON, Circuit Judge, and REGISTER, District Judge.
 GIBSON, Circuit Judge.
 
 
 1
 Appellant, Webster Groves Trust Company, and others sued James J. Saxon, Comptroller of the Currency, and the West Side National Bank, seeking to enjoin the operation of the newly chartered West Side National Bank and to compel Saxon to grant a formal adversary hearing before finally passing upon the Bank's charter application. The Honorable Roy W. Harper, United States District Judge for the Eastern District of Missouri, denied relief and awarded judgment in favor of the defendants in an opinion reported at 249 F.Supp. 557. We affirm.
 
 
 2
 Panintiffs below were eight commercial banking houses (seven state banks and one national bank) doing business in suburban St. Louis County, Missouri, within approximately a four-mile radius of the newly established place of business of defendant West Side National Bank.
 
 
 3
 On July 31, 1964, defendant West Side National Bank filed an application for a charter as a national bank with Saxon, Comptroller of the Currency, pursuant to the statutes and regulations controlling such applications. See 12 U.S.C. 21 et seq. and 12 C.F.R. 4.1 et seq. Pursuant to these regulations, the Comptroller caused a field investigation to be made of the applicant and the surrounding circumstances. In accordance with the established practice, the agent-examiners of Saxon called upon the competitors of the applicant bank, informed them of West Side's application and ascertained their reaction to the application.
 
 
 4
 On August 21, 1964, the president of appellant Webster Groves Trust Company wrote the Comptroller, advising him of Webster Groves' opposition to the granting of the charter and requesting a formal hearing on the application. By letter of August 27, 1964, the Deputy Comptroller agreed to discuss the matter, and a meeting was arranged to take place in Washington, D.C. on October 6, 1964. At this conference, the representatives of Webster Groves and another objecting bank met with a Deputy Comptroller. On behalf of the objecting banks, Webster Groves filed a written protest to the granting of the charter and requested that they be furnished a copy of the application and that a formal hearing be held for the purpose of crossexamining the applicant and presenting evidence in opposition to the charter. The Deputy Comptroller indicated that the views of the objecting banks would be taken into consideration, but he did not accede to the request for a formal hearing.
 
 
 5
 On December 12, 1964, the Comptroller approved the application for the establishment of the West Side National Bank, without holding any formal hearing.
 
 
 6
 On January 27, 1965, Webster Groves and seven other banks brought this action against the Comptroller and the West Side National Bank, seeking to have the issuance of the charter declared unlawful, directing the Comptroller to cancel the charter and to conduct a formal hearing prior to the granting of another charter, and to enjoin West Side National Bank from establishing and operating its bank during the interim. Webster Groves Trust Company is the only one of the original eight plaintiffs that is appealing the District Court's judgment.
 
 
 7
 The appellant acknowledges that this is a case of first impression on the precise issue of whether the Comptroller, in processing an application for a national bank charter, must hold a formal adversary hearing upon request of a competitor bank. Appellant contends it is entitled to a formal hearing at which it and other interested parties may be present, after due notice, and be afforded an opportunity to interrogate and crossexamine the applicants and present evidence in opposition; and, further, that a record be made so that a judicial review can be accorded as set forth in 10(e) of the Administrative Procedure Act, (A. P.A.) 5 U.S.C. 1009(e).
 
 
 8
 The Comptroller takes the position that neither the appellant nor any of the competitor banks have a standing to challenge the chartering of a new national bank; that the chartering of a new national bank is discretionary and is not subject to judicial review, and that he may pass upon charter applications informally, without a formal adversary hearing.
 
 
 9
 We believe that competing banks, as interested parties, have a right to challenge illegal acts of the Comptroller and that the Comptroller's discretionary actions are not immunized from judicial review, but we also believe that neither the National Banking Act, 12 U.S.C. 21 et seq., the Administrative Procedure Act, nor procedural due process requires a formal hearing of the type sought by appellant.
 
 
 10
 The National Banking Act is the source of the Comptroller's powers and duties in the granting of a national bank charter. This Act sets forth no requirement of a formal hearing on an application for a charter. The legislative history of the Act clearly indicates that no formal hearing was intended by Congress. After enumerating the detail requirements, 12 U.S.C. 27 authorizes the Comptroller to issue a certificate of authority:
 
 
 11
 'If, upon a careful examination of the facts so reported, and of any other facts which may come to the knowledge of the comptroller, whether by means of a special commission appointed by him for the purpose of inquiring into the condition of such association, or otherwise, it appears that such association is lawfully entitled to commence the business of banking * *.'
 
 
 12
 The Comptroller's practice for over one hundred years has been to proceed informally on these new bank applications. This practice has received the approval of the Attorney General's Committee on Administrative Procedure and has gone unchallenged in at least the appellate courts for the same period of time.[1]
 
 
 13
 The very nature of the decision required by the Comptroller indicates that a formal adversary type hearing would be of little benefit to him in the discharge of his discretionary powers. There is the further factor present that if bank applicants were subjected to severe public cross-examination, public presentation of unfavorable evidence and were forced to disclose their future plans and programs to competitors, public confidence in the banking system could be adversely affected.
 
 
 14
 There are a series of cases allowing judicial review of the Comptroller's actions in approving the establishment and location of a branch bank within state statutory guidelines in those states which allow branch banking. The review is generally limited to an abuse of discretion or actions beyond legal authority. First National Bank of Smithfield, North Carolina v. Saxon, 352 F.2d 267 (4 Cir. 1965), Camden Trust Company v. Gidney, 112 U.S.App.D.C. 197, 301 F.2d 521 (1962), cert. denied 369 U.S. 886, 82 S.Ct. 1158, 8 L.Ed.2d 287; Community National Bank of Pontiac v. Saxon, 310 F.2d 224 (6 Cir. 1962); National Bank of Detroit v. Wayne Oakland Bank, 252 F.2d 537 (6 Cir. 1956), cert. denied 358 U.S. 830, 79 S.Ct. 50, 3 L.Ed.2d 69.
 
 
 15
 The appellant seeks to analogize the branch banking application cases to the chartering of a new bank; and then contends that since there is judicial review of the Comptroller's decisions the A.P.A. requires an adversary hearing. Appellant admits that 5 of the A.P.A., setting up requirements of a formal hearing of an 'Adjudication required by statute to be determined on the record after an opportunity for an agency hearing,' does not expressly apply to the grant of a national bank charter, so that its only basis for legislative support for a formal hearing lies, if at all, within the ambit of 10(e) of the A.P.A., 5 U.S.C. 1009(e). Appellant then postulates this position into a contention that a hearing substantially equivalent to a 5 hearing is necessary for an adequate judicial review.
 
 
 16
 Section 10(e) of the Administrative Procedure Act, 5 U.S.C. 1009(e), provides in part:
 
 
 17
 'Scope of review. ' (e) So far as necessary to decision and where presented the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of any agency action. It shall * * * (B) hold unlawful and set aside agency action, findings, and conclusions found to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; * * * or (6) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court. In making the foregoing determinations the court shall review the whole record or such portions thereof as may be cited by any party, and due account shall be taken of the rule of prejudicial error.'
 
 
 18
 We do not accept appellant's argument. We do not think that the Administrative Procedure Act imposes any requirement of an adversary hearing before an agency, but that it only specifies the procedure to be followed when a hearing is required by some other statute. There is some legislative history indicating that the Act was intended to be applicabel 'only where Congress by some other statute has prescribed that the agency shall act only on a hearing.' (Statement of Congressman Walter, Chairman of the Sub-Committee which drafted the Act, 92nd Congressional Record, 5651.) Section 5 of the Act, 5 U.S.C. 1004, supports this view in the following language: 'In every case of adjudication required by statute to be determined on the record after opportunity for an agency hearing, * * *' certain enumerated procedures on hearings and notice must be observed by the agency; and 10 of the Act, 5 U.S.C. 1009, provides for judicial review of agency action, except so far as (1) statute precludes review or (2) agency action is by law committed to agency discretion. There is clearly nothing in this Act requiring formal agency hearings prior to agency action.
 
 
 19
 We do not have the prerogative of determining the advisability or the feasibility of a formal adversary hearing in the processing of a charter application for a national bank. Congress has this authority and has not thought it advisable to impose this requirement during the past hundred years. The District Court was correct in not requiring the Comptroller to hold such a hearing.
 
 
 20
 The Comptroller contends that the courts have no authority to review his act of granting a new bank charter as his discretion is exempt from judicial review under the above 1009(2). The Fourth Circuit, in First National Bank of Smithfield, North Carolina v. Saxon, 352 F.2d 267 (1965) held that the Comptroller's discretion in processing a branch banking application 'is not the type of discretion to which action has been 'committed by law' but is rather one of the character expressly made reviewable by 1009(e)(1).' To the same effect is Community National Bank of Pontiac v. Saxon, 310 F.2d 224 (6 Cir. 1962). The Smithfield case held in the majority opinion that this right of review is to be preserved by the courts reviewing denovo the merits of the Comptroller's actions. While the dissenting opinion of Judge Sobeloff held that a fair administrative hearing was necessary to provide the basis for determining whether the Comptroller's action was arbitrary, capricious, or otherwise unlawful under 10(e) of the Administrative Procedure Act, he did indicate agreement with the majority that a full and formal hearing was not necessary to satisfy the requirements of procedural due process. There are other cases holding a competitor bank has standing to sue to restrain the Comptroller of the Currency from issuing a certificate authorizing a national bank to open a branch bank and that the actions of the Comptroller in issuing such a certificate were subject to judicial review. Camden Trust Company v. Gidney, 112 U.S.App.D.C. 197, 301 F.2d 521 (1962), cert. denied 369 U.S. 886, 82 S.Ct. 1158, 8 L.Ed.2d 287; Commercial State Bank of Roseville et al. v. Gidney, 174 F.Supp. 770 (D.C.1959), aff'd 108 U.S.App.D.C. 37, 278 F.2d 871 (1960); Bank of Dearborn v. Saxon, 244 F.Supp. 394 (1965, E.D.Mich.).
 
 
 21
 Thus, though there is ample authority for review of the Comptroller's actions in granting authorization for branch banks, there are no cases holding a right to judicial review of the Comptroller's actions in granting a new bank charter.[2] We recognize that this is an expanding field of the law and that the trend is for the courts to grant some type of judicial review in many of these administrative type proceedings which concern the granting of licenses, personal rights, and privileges. While the courts have generally refused to review the actions of executive and administrative officials in the conduct of military and foreign affairs, Martin v. Mott, 12 Wheat. 19, 25 U.S. 19, 6 L.Ed. 537 (1827); Orloff v. Willoughby, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953); National City Bank of New York v. Republic of China, 348 U.S. 356, 75 S.Ct. 423, 99 L.Ed. 389 (1955), they have, in areas of commerce (granting licenses, charters and permits) and in actions involving personal liberty, (travel, use of the mails) tended to exercise a brand of limited review. Although the language may vary from case to case as the situation demands, still it is clear that courts do, when the occasion demands, give a limited review to administrative actions even though the administrative action is termed 'discretionary.' American School of Magnetic Healing v. McAnnulty, 187 U.S. 94, 23 S.Ct. 33, 47 L.Ed. 90 (1902); Kent v. Dulles, 357 U.S. 116, 78 S.Ct. 1113, 2 L.Ed.2d 1204 (1958); Friedman v. Schwellenbach, 81 U.S.App.D.C. 365, 159 F.2d 22 (1946), cert. denied 330 U.S. 838, 67 S.Ct. 979, 91 L.Ed. 1285; Great Western Packers Express, Inc. v. United States, 246 F.Supp. 151 (D.Colo.1965); Union Cartage Company v. United States, 244 F.Supp. 1005 (D.Mass.1965). The action of the Comptroller herein would seem to fall into the general commercial area where discretionary actions are subject to limited review.
 
 
 22
 This belief is supported in part by the Supreme Court's comments in Whitney National Bank in Jefferson Parish v. Bank of New Orleans, 379 U.S. 411, 85 S.Ct. 551, 13 L.Ed.2d 386 (1965), a Bank Holding Company Act case wherein Mr. Justice Clark, speaking for the majority, said at page 423, 85 S.Ct. at page 559:
 
 
 23
 'We do not say that under no circumstances may the Comptroller be restrained in equity from issuing a certificate to a new bank. * * *'
 
 
 24
 and by Mr. Justice Douglas's dissent at pages 427-428, 85 S.Ct. at page 561, where he touches upon the broad issues involved in this case at bar, using the following language:
 
 
 25
 '* * * But, as stated by the Solicitor General, 'The National Bank Act * * * makes no provision for an administrative hearing or for judicial review, and the Comptroller's decisions are made informally, without an administrative record.' The courts, however, have held that judicial cognizance of a controveray with the Comptroller may be taken and judicial power exercised to keep the Comptroller within statutory bounds. Camden Trust Co. v. Gidney, 112 U.S.App.D.C. 197, 301 F.2d 521; Union Savings Bank v. Saxon, 118 U.S.App.D.C. 296, 298, 335 F.2d 718, 720, and cases cited. That conslusion is consistent with our holding in Columbia Broadcasting System, Inc. v. United States, 316 U.S. 407, 423-424 (62 S.Ct. 1194, 86 L.Ed. 1563), that , absent a congressional design to bar all judicial review (Switchmen's Union (of North America) v. National Mediation Board, 320 U.S. 297, (64 S.Ct. 95, 88 L.Ed. 61)), injunctive relief is available where administrative remedies are either inapplicable or inadequate. This rule keeps the Comptroller from being a free-wheeling agency dispensing federal favors; and it gives some assurance that he will render principled decisions within the rule of law laid down by Congress.'
 
 
 26
 We agree that the action by the Comptroller is not subject to review by trial de novo, nor does it depend upon a showing of substantial evidence. Likewise, we are precluded from invading the province of the Comptroller's expertise and evaluating the sagacity of, or the policy behind, his actions. The Comptroller, however, must be subordinate to the law from which he received his authority, and is subject to the limitations imposed by that law. Therefore, if he acts in excess of his statutory grant of power, acts arbitrarily or capriciously, abuses his discretion, or unlawfully discriminates in violation of the Constitution, he is certainly subject to restraint by the courts. Though he may exercise the discretion the expertise of his office affords him, the congressional grant of authority does not empower arbitrary and capricious action, nor does it contemplate abuse of that discretion. Therefore, we do not believe the courts are powerless to protect the public from unconstitutional, illegal, or otherwise arbitrary activities of administrative officials. The Comproller is free to exercise his discretion in the granting of charters, free from any review on the merits of his action. However, if the Comptroller acts in excess or abuse of his legal authority, to this extent his actions are subject to judicial review, with the burden of proof resting on the party seeking the review. This holding we believe to be consistent with 10 of the Administrative Procedure Act, 5 U.S.C. 1009, because no statute precludes judicial review, nor is this the type of agency action that is by law committed to agency discretion so as to be 'immunized from review by the exemption in the preface of 1009'. First National Bank of Smithfield, North Carolina v. Saxon, supra, at page 270 of 352 F.2d. Therefore, subsection 10(c) of the Act, 5 U.S.C. 1009(c) would be applicable. This subsection reads:
 
 
 27
 'Acts reviewable. ' (c) Every agency action made reviewable by statute and every final agency action for which there is no other adequate remedy in any court shall be subject to judicial review.'
 
 
 28
 The Comptroller is also asserting that a competitor has no standing to object to lawful competition. With this rule we find no fault, but the banks surely have the standing to object to illegal competition. Frost v. Corporation Commission of Oklahoma, 278 U.S. 515, 49 S.Ct. 235, 73 L.Ed. 483 (1929); National Bank of Detroit v. Wayne Oakland Bank, 252 F.2d 537 (6 Cir. 1958), cert. denied 358 U.S. 830, 79 S.Ct. 503. Therefore, when a competitor believes he is being subjected to illegal competition owing to impropriety by the Comptroller, the courts should be open to hear and decide the alleged wrong. The trial court was vested with jurisdiction over the subject matter of this litigation.
 
 
 29
 The actions of the Comptroller under review, however, are perfectly consistent with his authorized statutory power, they did not violate any due process provisions of the Constitution and there is no indication that there has been any abuse of his discretionary authority. Consequently, for the reasons set forth herein and in the trial court's sound memorandum opinion, we believe the complaint of appellant was properly dismissed.
 
 
 30
 Judgment of the District Court is affirmed.
 
 
 
 [1]
 An excerpt from the Report of the Attorney General's Committee on Procedure, pp. 142-143, Sen.Doc. No. 8, 77th Cong., 1st Sess., is as follows:
 'The Committee recognizes, however, that a major safeguard is careful and conscientious investigation, that in determining whether individuals are suited to engage in the banking business, or whether the community needs a bank, or whether a bank should be insured, and similar questions, a congeries of imponderables is involved, calling for almost intuitive special judgments so that hearings are not ordinarily useful, and that the banking business is a delicate one so that the advantages and importance of ready and frank information may outweigh the dangers of accepting confidential information. Accordingly, and in the absence of any substantial evidence that there has been an abuse of power, the Committee is not prepared to recommend that either hearings be held prior to denial or that in all cases the identity of the author of the adverse evidence be disclosed to the applicant.'
 
 
 [2]
 The case of First Nat. Bank of Capitol Hill v. Murray, 212 F. 140, 142 (8 Cir. 1914) is cited for the proposition that the Comptroller has absolute discretion in granting a bank charter and his actions are not subject to judicial review. The Court therein said:
 'Extensive powers of control and visitation have been confided to the Comptroller of the Currency, and his acts within the law are not subject to review by the courts.'