396 F.2d 52
 WARREN BANK, a Michigan banking association, Plaintiff-Appellant,
v.
William B. CAMP, Comptroller of the Currency, U. S. Treasury Department, and National Bank of Warren, a national banking association, Defendants-Appellees.
 No. 17718.
 No. 17719.
 United States Court of Appeals Sixth Circuit.
 May 31, 1968.
 
 Wallace M. Handler, Detroit, Mich., for appellant, Lebenbom & Handler, David Lebenbom, Detroit, Mich., on the brief.
 Walter H. Fleischer, Atty., Dept. of Justice, Washington, D. C., for appellee, William B. Camp, Carl Eardley, Acting Asst. Atty. Gen., Lawrence Gubow, U. S. Atty., John C. Eldridge, Atty., Dept. of Justice, Washington, D. C., on the brief.
 Robert E. Epstein, Detroit, Mich., for appellee, National Bank of Warren, Bizer & Sommers, Norman S. Sommers, Fred Gordon, Detroit, Mich., on the brief.
 Before O'SULLIVAN, PHILLIPS and EDWARDS, Circuit Judges.
 EDWARDS, Circuit Judge.
 
 
 1
 In this case an existing state bank, plaintiff-appellant Warren Bank, seeks to enjoin the Comptroller of Currency from issuing a charter to a new national bank which proposed to locate and do business in the same city and obviously in competition with plaintiff-appellant bank.
 
 
 2
 The record in this case discloses that the City of Warren is the fastest growing city in Michigan, and by the time of the hearing involved in this case was already the fourth largest city in Michigan.
 
 
 3
 The Comptroller conducted an administrative hearing wherein plaintiff-appellant Warren Bank was given opportunity to present evidence bearing upon the applications considered in this appeal. The administrative files developed in the investigation and at the administrative hearing were introduced as an exhibit before the United States District Judge on defendant-appellees' motions for summary judgment.
 
 
 4
 Plaintiff-appellant bank thereafter filed a lengthy response to the motions for summary judgment, along with affidavits setting forth its evidence and claims.
 
 
 5
 The District Judge who heard this matter granted defendant-appellees' motions for summary judgment, setting forth his reasons for doing so in an opinion which appears at 263 F.Supp. 34 (E.D.Mich.1966).
 
 
 6
 Two appellate issues of substance are presented. First, defendant-appellee Comptroller claims that plaintiff-appellant has no standing to sue. Second, plaintiff-appellant claims that the District Judge erred in granting the motions for summary judgment, either because he did so without conducting a trial de novo pertaining to the administrative decision here complained of, or because he did so without allowing plaintiff-appellant to take depositions of the Comptroller and two of his administrative aides.
 
 
 7
 Appellee Comptroller argues with much insistence that appellant has no standing to sue and hence that the complaint should have been and should now be dismissed.
 
 
 8
 We recognize that the United States Supreme Court has recently reaffirmed its view that economic injury from lawful competition is not alone sufficient to convey standing to sue.
 
 
 9
 "This Court has, it is true, repeatedly held that the economic injury which results from lawful competition cannot, in and of itself, confer standing on the injured business to question the legality of any aspect of his competitor's operations. Railroad Co. v. Ellerman, 105 U.S. 166, [26 L.Ed. 1015] (1881); Alabama Power Co. v. Ickes, 302 U.S. 464, [58 S.Ct. 300, 82 L.Ed. 374] (1938); Tennessee Power Co. v. TVA, 306 U.S. 118, [59 S.Ct. 366, 83 L.Ed. 543] (1939); Perkins v. Lukens Steel Co., 310 U.S. 113, [60 S. Ct. 869, 84 L.Ed. 1108] (1940)." Hardin v. Kentucky Utilities Co., 390 U.S. 1, 88 S.Ct. 651, 19 L.Ed.2d 787 (1968).
 
 
 10
 On the other hand, appellant relies for standing to sue upon such cases as Frost v. Corporation Commission, 278 U.S. 515, 49 S.Ct. 235, 73 L.Ed. 483 (1929), and Webster Groves Trust Co. v. Saxon, 370 F.2d 381 (8th Cir. 1966).
 
 
 11
 In Alabama Power Co. v. Ickes, 302 U.S. 464, 58 S.Ct. 300, 82 L.Ed. 374 (1938), the United States Supreme Court distinguished Frost as follows:
 
 
 12
 "Frost v. Corporation Commission, 278 U.S. 515 [49 S.Ct. 235, 73 L.Ed. 483], relied upon by petitioner, presents an altogether different situation. Appellant there owned a cotton-ginning business in the city of Durant, Oklahoma, for the operation of which he had a license from the corporation commission. The law of Oklahoma, provided that no gin should be operated without a license from the commission, which could be obtained only upon specified conditions. We held that such a license was a franchise constituting a property right within the protection of the Fourteenth Amendment; and that while the acquisition of the franchise did not preclude the state from making similar valid grants to others, it was exclusive against an attempt to operate a competing gin without a permit or under a void permit. The Durant Co-operative Gin Company sought to obtain a permit from the commission which, for reasons stated in our opinion, we held would be void and a clear invasion of Frost's property rights. We concluded that a legal right of Frost to be free from such competition would be invaded by one not having a valid franchise to compete, and sustained Frost's right to an injunction against the commission and the Durant company. See Corporation Commission [of Oklahoma] v. Lowe, 281 U.S. 431, 435 [50 S.Ct. 397, 398, 74 L.Ed. 945]. The difference between the Frost case and this is fundamental; for the competition contemplated there was unlawful while that of the municipalities contemplated here is entirely lawful." Alabama Power Co. v. Ickes, 302 U.S. 464, 484-485, 58 S.Ct. 300, 306 (1938).
 
 
 13
 But, of course, appellant Warren Bank really contends in its complaint that the proposed competition by the National Bank of Warren is unlawful. It asserts that the grant of the National Bank of Warren charter was arbitrary and capricious and an abuse of appellee Comptroller's discretion.
 
 
 14
 It seems impossible to decide which of these two lines of reasoning is applicable to our present case absent analysis of the issues presented by appellant. Hence, without first seeking to resolve the standing question as a matter of law, we assume, arguendo, that appellant had standing to maintain this action. See Citizens Bank of Hattiesburg v. Camp, 387 F.2d 375 (5th Cir.), cert. denied, 391 U.S. 904, 88 S.Ct. 1652, 20 L. Ed.2d 418 (U.S. May 6, 1968).
 
 
 15
 Appellant contends that the District Judge erred in granting defendant-appellees' motions for summary judgment. It relies in this regard upon a number of decisions wherein courts have sought to confine the grant of summary judgments to situations where there were no substantial questions of fact in dispute. Pierce v. Ford Motor Co., 190 F.2d 910 (4th Cir.), cert. denied, 342 U.S. 887, 72 S.Ct. 178, 96 L.Ed. 666 (1951); Toebelman v. Missouri-Kansas Pipeline Co., 130 F.2d 1016 (3d Cir. 1942); accord, Rogers v. Peabody Coal Co., 342 F.2d 749 (6th Cir. 1965); S. J. Groves & Sons Co. v. Ohio Turnpike Commission, 315 F.2d 235 (6th Cir.), cert. denied, 375 U.S. 824, 84 S.Ct. 65, 11 L.Ed.2d 57 (1963).
 
 
 16
 We have no inclination to deviate from the rule pertaining to summary judgments which these cases outline. But neither from appellant's brief nor from its oral argument are we able to deduce what substantial issues of fact there were for either deposition or trial. In its brief appellant does contend that:
 
 
 17
 "1) The Comptroller failed to properly assess the needs of the community, and such failure was an arbitrary and capricious exercise of discretion on the part of the Comptroller.
 
 
 18
 "2) The Comptroller arbitrarily and capriciously assessed the management of defendant-appellee bank.
 
 
 19
 "3) [I]n spite of * * * consistency in the recommendations of the Regional Comptroller's Office that all applications be denied, the charter for the Defendant-Appellee, National Bank of Warren, was granted.
 
 
 20
 "4) Plaintiff-Appellant in its pleadings alleges that Defendant-Appellee, National Bank of Warren, is in truth and in fact an alter ego of an existing banking association."
 
 
 21
 We agree with the District Judge that the first two statements are asserted conclusions of law rather than issues of fact.
 
 
 22
 The third statement quoted suggests that at various times prior to the ultimate grant of the charter, subordinates of the Comptroller had made two negative recommendations. There is no dispute of fact as to this assertion, although the administrative record does present a wholly plausible explanation for the ultimate decision in the merging of all or part of the two previously conflicting applications at the suggestion of the Comptroller.
 
 
 23
 As to the fourth assertion, this charge is left without a line of particularized support in appellant's amended complaint and in his affidavits. Such conclusory allegations do not present issues of fact. See Fed.R.Civ.P. 56(e); Bumgarner v. Joe Brown Co., 376 F.2d 749 (10th Cir.), cert. denied, 389 U.S. 831, 88 S.Ct. 99, 19 L.Ed.2d 90 (1967); Scolnick v. Lefkowitz, 329 F.2d 716 (2d Cir.), cert. denied, 379 U.S. 825, 85 S.Ct. 49, 13 L.Ed.2d 35 (1964).
 
 
 24
 Thus we could simply affirm the District Judge's grant of the motion for summary judgment within the technical bounds of Rule 56 of the Federal Rules of Civil Procedure.
 
 
 25
 We do not, however, believe that this case was presented to or handled by the District Court as a normal Rule 56 motion.
 
 
 26
 While this complaint is in form an original petition before the District Court, in fact it is in the nature of a review of the action of an administrative official charged by statute with a wide discretion. 12 U.S.C. §§ 21, 22, 26 and 27 (1964). The exact form of judicial review available is not easy to delineate with a precision which is applicable to all cases.
 
 
 27
 The standard of judicial review is set by the Administrative Procedure Act. The courts determine only whether or not the action of the administrator was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2) (A) (Supp. II, 1965-66). See 4 K. Davis, Administrative Law § 28.16 (1958, Supp. 1965). Thus far the District Courts have with appellate approval exercised a considerable discretion in determining the form of review required for that decision. See Citizens Bank of Hattiesburg v. Camp, 387 F.2d 375 (5th Cir.), cert. denied, 391 U.S. 904, 88 S.Ct. 1652, 20 L.Ed.2d 418 (U.S. May 6, 1968); Webster Groves Trust Co. v. Saxon, 370 F.2d 381 (8th Cir. 1966); Camden Trust Co. v. Gidney, 112 U.S.App.D.C. 197, 301 F.2d 521, cert. denied, 369 U.S. 886, 82 S.Ct. 1158, 8 L.Ed.2d 287 (1962); Community National Bank of Pontiac v. Saxon, 310 F.2d 224 (6th Cir. 1962); Bank of Dearborn v. Manufacturers National Bank of Detroit, 377 F.2d 496 (6th Cir. 1967); American Bank & Trust Co. v. Saxon, 373 F.2d 283 (6th Cir. 1967); Peoples Bank of Trenton v. Saxon, 373 F.2d 185 (6th Cir. 1967).
 
 
 28
 There appears, however, to be general agreement that a trial de novo is not required for every complaint where abuse of administrative discretion is pled. See Citizens Bank of Hattiesburg v. Camp, 387 F.2d 375 (5th Cir.), cert. denied, 391 U.S. 904, 88 S.Ct. 1652, 20 L.Ed.2d 418 (U.S. May 6, 1968); Webster Groves Trust Co. v. Saxon, 370 F.2d 381 (8th Cir. 1966); Camden Trust Co. v. Gidney, 112 U.S.App.D.C. 197, 301 F. 2d 521, cert. denied, 369 U.S. 886, 82 S. Ct. 1158, 8 L.Ed.2d 287 (1962); Community National Bank of Pontiac v. Saxon, 310 F.2d 224 (6th Cir. 1962).
 
 
 29
 Here the District Judge, limiting his review to the pleadings and affidavits filed by the parties, held that complainant had not make out a prima facie case of abuse of discretion, and hence, that no trial de novo was required.
 
 
 30
 We agree with this conclusion.
 
 
 31
 Lastly, appellant contends that it should have been allowed to take depositions of the Comptroller and two of his subordinate officials.
 
 
 32
 Appellant has not shown "a prima facie case of misconduct." Singer Sewing Machine Co. v. N.L.R.B., 329 F.2d 200, 208, 12 A.L.R.3d 775 (4th Cir. 1964).
 
 
 33
 What appellant seems to us to seek is an opportunity to depose the Comptroller in order to probe his mind as to exactly why he saw fit to exercise his discretion as he did in relation to the grant of this charter. This appellant clearly was not entitled to do.
 
 
 34
 In the fourth Morgan case, United States v. Morgan, 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429 (1941), the United States Supreme Court said:
 
 
 35
 "Over the Government's objection the district court authorized the market agencies to take the deposition of the Secretary. The Secretary thereupon appeared in person at the trial. He was questioned at length regarding the process by which he reached the conclusions of his order, including the manner and extent of his study of the record and his consultation with subordinates. * * * [T]he short of the business is that the Secretary should never have been subjected to this examination. The proceeding before the Secretary `has a quality resembling that of a judicial proceeding.' Morgan v. United States, 298 U.S. 468, 480 [56 S.Ct. 906, 911, 80 L.Ed. 1288]. Such an examination of a judge would be destructive of judicial responsibility. We have explicitly held in this very litigation that `it was not the function of the court to probe the mental processes of the Secretary.' 304 U.S. 1, 18 [58 S.Ct. 773, 776, 82 L.Ed. 1129]. Just as a judge cannot be subjected to such a scrutiny, compare Fayerweather v. Ritch, 195 U.S. 276, 306-307 [25 S.Ct. 58, 67, 49 L.Ed. 193] so the integrity of the administrative process must be equally respected. See Chicago, B. & Q. Ry. Co. v. Babcock, 204 U.S. 585, 593 [27 S. Ct. 326, 327, 51 L.Ed. 636]." United States v. Morgan, 313 U.S. 409, 421-422, 61 S.Ct. 999, 1004-1005 (1941).
 
 
 36
 See also 2 K. Davis, Administrative Law § 11.05 (1958).
 
 
 37
 We find no merit to appellee National Bank of Warren's motion for double costs and attorney's fees.
 
 
 38
 The judgment of the District Court is affirmed.