**FIRST NATIONAL BANK OF BUFFALO, Buffalo, Kentucky, Movant,**

v.

**The PEOPLES STATE BANK, INC., et al., Respondents.**

Supreme Court of Kentucky.

Nov. 21, 1978.

Rehearing Denied Jan. 3, 1979.

William A. Young, Frankfort, for movant.

G. Lee Langston, Dept. of Banking and Securities, Frankfort, William E. Johnson, Johnson, Judy & Gaines, Frankfort, Larry D. Raikes, Hodgenville, for respondents.

REED, Justice.

This is the second appearance of this dispute before this court.[1] Although the parties explore various nooks and crannies, both procedural and substantive, the basic issues for decision are few and limited. The respondent, Peoples State Bank, applied for permission to start a new bank in Hodgenville, LaRue County, Kentucky. The movant, First National Bank of Buffalo, LaRue County, Kentucky, an existing bank in the same locality, protested this

potential competition. The Commissioner of Banking caused an extensive field investigation of the application to be made by an examiner of the Department of Banking and a representative of the Federal Deposit Insurance Corporation. This procedure was pursuant to the authority of KRS 287.-050(1). The investigation report thoroughly considered the merits of the application. It detailed the needs of the community to be served. It evaluated the adequacy of capital structure, the management, the financial history and condition, and the future earnings prospects of the applicant bank.

The commissioner had notified other banks in the area of the pendency of the application for a new bank. The written protest of the Buffalo Bank first alleged that fraud had been perpetrated upon the commissioner by alleged incorrect figures contained in the application, and, second that the granting of the application for a new bank would not promote public convenience and advantage and that there was no reasonable probability of successful operation by the new bank. The element of fraud has been effectively withdrawn from the case.

The commissioner had formulated a procedural rule, BR:73–3, which provided in pertinent part as follows: "If the Commissioner finds from the examination and from his own investigation that all the factors in item (c) are favorable and there are no protests nor requests for an evidentiary hearing on the application, he shall approve the application. Even though there be protests, if the Commissioner has reasonable grounds to believe such protests to be insubstantial in nature, irrelevant or frivolous, further, that the application is meritorious, he may approve the application without an evidentiary hearing."

The protesting bank did not request an evidentiary hearing. The commissioner entered detailed findings of basic facts as previously related. He did not characterize

---

1. The first appearance is reported in *Phelps v. Sallee*, Ky., 529 S.W.2d 361 (1975) where a detailed recitation of facts may be found.

the protests by a conclusionary statement that they were insubstantial in nature, irrelevant or frivolous. Based upon his detailed findings of basic facts, the commissioner gave approval to the applicant bank upon specified conditions. Thereafter the circuit court directed the commissioner to rehear the matter. We reversed and held that the commissioner had no such authority.[2]

The movant thereafter filed a proceeding for judicial review of the commissioner's order conditionally approving the application of the new bank. The circuit court held that the commissioner acted arbitrarily "in failing either to hold a hearing upon the protests filed, or to make findings, pursuant to his own duly adopted regulation, that he . . . 'has reasonable grounds to believe such protests to be insubstantial in nature, irrelevant or frivolous . . . .'" The circuit court ordered the matter remanded to the commissioner for further consideration. The applicant bank appealed to the Court of Appeals. That court reversed the circuit court with direction that it enter a judgment for the applicant bank. The protesting bank applied for discretionary review by this court which we granted. We affirm the decision of the Court of Appeals.

### I

A serious threshold question is whether the movant has standing to sue. The United States Supreme Court has reaffirmed its view that economic injury from lawful competition alone is not sufficient to convey standing to sue. "This court has, it is true, repeatedly held that the economic injury which results from lawful competition cannot, in and of itself, confer standing on the injured business to question the legality of any aspect of his competitor's operations." *Hardin v. Kentucky Utilities Co.*, 390 U.S. 1, 5–6, 88 S.Ct. 651, 654, 19 L.Ed.2d 787, 792 (1968). Nor can it be said that the movant as an established banking concern has a vested property interest which is protected by the Due Process Clause as is true in zoning and some other subjects of adminis-

trative regulation. The movant has no vested interest in the banking business of its area and holds no exclusive franchise. On the other hand, there is authority for the proposition that where proposed competition is unlawful by reason of arbitrary and capricious administrative action or abuse of discretion, the competitor possesses sufficient standing to sue. See *Warren Bank v. Camp*, 396 F.2d 52 (6th Cir. 1968). Without seeking to resolve the standing question as a matter of law, we will assume, arguendo, that movant had standing to maintain this action as did the 6th Circuit in *Warren Bank*, supra.

### II

Movant insists that it was entitled to a hearing. In view of the arguments made in the movant's brief and in view of the expressions made by the circuit judge, we take this to mean a trial-type hearing. We reject that proposition. Interestingly enough, the problems of structuring administrative procedures and judicial review of administrative actions in the banking area have been particular concerns of Kenneth Culp Davis, the outstanding authority on administrative law in this country. In his book, K. Davis, Discretionary Justice, a Preliminary Inquiry, 122 (1969), he states: "My opinion is and has long been that trial-type hearings are a clumsy way to determine how many banks and which banks ought to serve a community." Concerning regulation of banking, he states later: "What has happened during the 1960's is that the federal courts have at last gone along with the idea that trial-type hearings on contested applications for charters or branches are not required." Id.

In his treatise Davis says:

"Specific holdings that competitors of applicants are not entitled to a full trial-type hearing on the granting of applications include the *Northwest Bankcorporation [v. Board of Governors of Federal Reserve System*, 303 F.2d 832 (8th Cir. 1962)]; *Bridgeport [Federal Savings & Loan Association v.*

2. Id.

*Federal Home Loan Bank Board,* 307 F.2d 580 (3d Cir. 1962) cert. denied 371 U.S. 950, 83 S.Ct. 504, 9 L.Ed.2d 499 (1963)]; *Webster Groves Trust Co. v. Saxon,* 370 F.2d 381 (8th Cir. 1966); *Citizens Bank of Hattiesburg v. Camp,* 387 F.2d 375 (5th Cir. 1967), certiorari denied 391 U.S. 704, [904], 88 S.Ct. 1652, 20 L.Ed.2d 418 (1968). Such holdings constitute a rather respectable authority." Davis, Administrative Law Treatise, Sec. 4.04 (Supp.1970).

*First Federal Savings & Loan Association of Waterboro v. Board of Bank Control for South Carolina,* 263 S.C. 59, 207 S.E.2d 801 (1974) presents an analogous situation to the case before us. There the South Carolina administrative authority as a result of investigation and examination granted a charter to operate a state savings and loan association over the protest of competitors. The Supreme Court of South Carolina held that neither the regulatory statute nor procedural due process required an adversary hearing before the administrative authority in passing upon an application to establish a new savings and loan association. The South Carolina court cited federal cases and made the following statements which we regard particularly applicable to the case before us:

"These decisions base the denial of an adversary hearing to a competitor in such matters upon the peculiar nature and requirements of the banking business. This reasoning is succinctly stated in *Webster Groves Trust Company v. Saxon,* supra, as follows:

'The very nature of the decision required by the Comptroller indicates that a formal adversary type hearing would be of little benefit to him in the discharge of his discretionary powers. There is the further factor present that if bank applicants were subjected to severe public cross-examination, public presentation of unfavorable evidence and were forced to disclose their future plans and programs to competitors, public confidence in the banking system could be adversely affected.' "

■ We find that the better reasoned state authorities and the federal authorities establish that the movant's constitutional and statutory rights were not violated. The contents of the detailed application were open and available to the protesting bank. The investigation report was open and accessible. The detailed findings by the commissioner addressed themselves to the information which the protesting bank was allowed to present for the administrator's consideration. These findings of evidentiary facts completely disclosed the reasons of the commissioner for granting the application. We therefore reject movant's contention in this regard.

### III

Movant argues in substance that even if a trial-type hearing was neither constitutionally nor statutorily required, nevertheless the commissioner's departmental regulation administratively entitled movant to such a hearing unless the commissioner upon evidence recited made a finding that movant's protest was either insubstantial, irrelevant or frivolous. In support of this proposition, reliance is placed upon such cases as *Pearl v. Marshall,* Ky., 491 S.W.2d 837 (1973). So far as relevant to this argument, the *Pearl* case stands for the proposition that when the courts review administrative decisions we will not imply a finding of basic facts upon a mere recitation of findings of ultimate facts. In this case the movant actually argues the converse. It would contend that the commissioner was obligated to recite and specifically parrot the ultimate finding that the protest was insubstantial in spite of his basic findings of fact which rejected the allegations contained in the protest and established that the application was meritorious. Davis succinctly answers the argument:

"The two questions that arise concerning implied findings are whether basic findings may be implied from the ultimate findings, and whether ultimate findings may be implied from the action taken. The usual answer to the first question is no, and the usual answer to

the second is yes, . . . ." 2 K. Davis, Administrative Law Treatise, Sec. 16.07 (1958) (footnote omitted).

In *Yellow Cab Co. v. Public Utility Hearing Board*, 79 R.I. 507, 90 A.2d 726, 728 (1952), the Supreme Court of Rhode Island applied the principle when it said:

"It is our opinion that such a finding as is referred to above does not have to be set out in precise or specific language by the hearing board in its decision, although if so expressed it would leave no room for argument or misunderstanding. Nor does such a finding necessarily have to be expressed by the hearing board with the definiteness which is ordinarily required for analogous findings in workmen's compensation and zoning board cases, as the appellant maintains. Such conclusion if found fairly and reasonably by implication in the decision is sufficient.

"We have examined the decision of the hearing board in the instant proceeding and after consideration we are of the opinion that, when read as a whole, it contains by reasonable implication a sufficient finding of fact that in the existing circumstances the public convenience and necessity required the additional taxicab service asked for by the applicants. In view of such finding and without considering the weight of the evidence in support thereof we cannot say that its order was unlawful or unreasonable."

In the case before us, the detailed basic findings by the commissioner constituted an adequate predicate from which it could be plainly implied that the commissioner concluded the ultimate fact that the protest was insubstantial.

We therefore reject movant's contention that the commissioner was required to set forth and parrot conclusionary recitations of an ultimate fact. We conclude that the disposition of the matter by the Court of Appeals was correct.

The decision of the Court of Appeals is affirmed and the case is remanded to the Franklin Circuit Court with directions to enter judgment in favor of the applicant bank.

All concur except CLAYTON, J., who dissents on the ground that in his opinion sound public policy requires a trial-type hearing in matters of this nature.