**PEOPLES BANK OF TRENTON,**
Plaintiff-Appellee,

and

**National Bank of Wyandotte and Security Bank, Intervening Plaintiffs-Appellees,**

v.

**James J. SAXON, as Comptroller of the Currency of the United States of America, Defendant-Appellant.**

**PEOPLES BANK OF TRENTON,**
Plaintiff-Appellee,

and

**National Bank of Wyandotte and Security Bank, Intervening Plaintiffs-Appellees,**

v.

**MANUFACTURERS NATIONAL BANK OF DETROIT, Defendant-Appellant.**

Nos. 16802, 16804.

United States Court of Appeals
Sixth Circuit.

Jan. 19, 1967.

David L. Rose, Department of Justice, Washington, D. C., John W. Douglas, Asst. Atty. Gen., Morton Hollander, Atty., Department of Justice, Washington, D. C., Lawrence Gubow, U. S. Atty., Detroit, Mich., on brief, for James J. Saxon, etc.

Carson C. Grunewald, Detroit, Mich., Bodman, Longley, Bogle, Armstrong & Dahling, James M. Baysinger, Detroit, Mich., on brief, for Manufacturers Nat. Bank of Detroit.

Richard B. Foster, Lansing, Mich., Raubolt, MacDonald & Dodge, Raleigh R. Raubolt, Trenton, Mich., Foster, Campbell, Lindemer & McGurrin, Theodore W. Swift, Edmund E. Shepherd, Lansing, Mich., on brief, for appellees.

Richard W. Look, Wyandotte, Mich., for intervening plaintiff-appellee National Bank of Wyandotte.

Harry F. Vellmure and Victor T. Mitea, Allen Park, Mich., for intervening plaintiff-appellee Security Bank.

Before O'SULLIVAN and PHILLIPS, Circuit Judges, and KALBFLEISCH *, District Judge.

KALBFLEISCH, District Judge:

These declaratory judgment actions were brought against the Comptroller of the Currency (hereafter the Comptroller) and the Manufacturers National Bank of Detroit (hereafter Manufacturers) by the Peoples Bank of Trenton (hereafter Peoples) to have declared void the Comptroller's issuance of a certificate permitting Manufacturers to operate a branch at the intersection of Telegraph, Toledo and West Roads in Brownstown Township, Wayne County, Michigan, and to enjoin the continued operation of such branch. Two other interested banks intervened as plaintiffs.

By stipulation of the parties, these two actions were consolidated by the trial Court. After examining the Comptroller's file and evidence offered at a

* Honorable Girard E. Kalbfleisch, United States District Judge for the Northern District of Ohio, Eastern Division, sitting by designation.

trial on the merits, the District Court concluded that the Comptroller's decision was not supported by competent, substantial evidence and therefore was an abuse of discretion. Accordingly, the District Court granted the relief sought by the plaintiffs. These appeals are prosecuted from the final orders granting injunctive relief.

On July 3, 1964, Manufacturers sought permission of the Comptroller to open and operate a branch at the above-mentioned location. The office of the Comptroller conducted an investigation, during the course of which an examiner from that office made a field inspection of the area in question accompanied by an employee of Manufacturers and filed his report and recommendation. On December 4, 1964, the Comptroller approved Manufacturers application and on December 14, 1964, executed the authorization certificate. On December 15, 1964, the branch was opened in temporary quarters.

Plaintiff commenced these actions on December 18, 1964, asserting that the area in which the branch was located did not constitute an unincorporated village within the meaning of the Michigan branch-banking law (Section 34, Michigan Financial Institutions Act, 17 Mich. Stats.Ann., Section 23.762). This statutory limitation is incorporated into federal law by 12 U.S.C.A. Section 36(c). In addition, plaintiff asserted that the comptroller's action was unlawful because he had not held an adjudicatory hearing pursuant to the Administrative Procedures Act, and because there was no necessity for the establishment of a branch at that location under Michigan law. The District Court rejected these latter two contentions upon motion for summary judgment and proceeded to trial on the remaining contention. No appeal of the issues disposed of by summary judgment is being pursued.

Under the applicable section of the National Bank Act, 12 U.S.C.A. Section 36 (c), a national bank, with the approval of the Comptroller of the Currency, may establish and operate branches only at such places within the state in which the bank is located as are expressly authorized for state banks by the law of the state in question, subject to the restrictions as to location imposed by the law of the state on state banks. Michigan law limits the establishment of a branch bank to a location "within a village or city other than that within which it was originally chartered: * * * provided further, that no such branch shall be established in a city or village in which a state or national bank or branch thereof is then in operation * * *." 17 M.S.A. 23.762, Comp.Laws 1948, Section 487.34.

The issue presented here is a familiar one in the State of Michigan, where many communities are unincorporated but are villages, nevertheless, within the meaning of the Michigan branch-banking law. When such an unincorporated area is proposed as a location for a branch bank it becomes necessary to determine if that area is an unincorporated village under Michigan law.

The meaning of the word "village" is not explicit. The Supreme Court of Michigan has said that it can only be defined and construed for banking purposes "in the light cast by the obvious purpose of the statute and the mischief sought to be remedied." Wyandotte Savings Bank v. Eveland, 347 Mich. 33, 78 N.W.2d 612 (1956). On page 41 of its opinion in that case, 78 N.W.2d on page 617, the Court gave the following definition of an unincorporated village:

> "* * * merely an assemblage or community of people, a nucleus or cluster for residential and business purposes, a collective body of inhabitants, gathered together in one group."

A more recent elaboration of the definition appears in the case of Bank of Dearborn v. State Banking Commissioner, 365 Mich. 567, 571, 114 N.W.2d 210, 212 (1962), where the Court said in part:

> "It is a settlement, a centralized populous area having a general common residential and business activity serving the particular area or district. It

does not have to be a separate political entity or corporation. It is a 'locality' or 'area to be served.' It has been analyzed as a 'trading area' distinct from that assigned to 'municipality.'"

The Court indicated that economic factors rather than governmental, geographical or physical boundaries are controlling in arriving at the definition of a given area as a "village."

In Community National Bank of Pontiac v. Saxon, 310 F.2d 224, 226 (CA 6, 1962), this Court held that the Comptroller has "the initial responsibility of determining whether the several conditions under which a national banking association may establish a branch are met. * * * The finding of the Comptroller that the area in question is a 'village' is essentially a finding of fact. * * * [T]he decisions of executive officers on questions of fact are conclusive if reasonably supported by substantial evidence."

Manufacturers, one of the larger Detroit banks, is attempting to establish a branch near the center of a three-square-mile unincorporated area adjacent to the incorporated village of Woodhaven. Peoples operates a branch bank in Woodhaven. The area alleged by Manufacturers to be an unincorporated village contains 30 to 36 businesses, 360 homes, and a population of 1,330 people. There are no shopping centers, schools, churches, or professional offices in the area. The District Court took testimony, reviewed the file of the Comptroller, and by stipulation of all parties visited the area in question in the company of the attorneys on both sides.

The scope of judicial review of a determination of the Comptroller is governed by 5 U.S.C.A., Section 706, which is, in applicable part, as follows:

"To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

\* \* \* \* \* \*

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

\* \* \* \* \* \*

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error."

This section, formerly 5 U.S.C.A. Section 1009(e), is retained by Public Law 89–554, 80 Stat. 378, approved September 6, 1966. This Court's decision in Community National Bank of Pontiac v. Saxon, supra, was based upon the former Section.

The proceeding before the District Court was a separate and distinct adversary proceeding to be reviewed under the same criteria as any other adversary proceeding. The District Judge limited his review to the scope permitted by the previous decisions of this Court, addressing himself to the sole issue of the character of the Comptroller's action.

The Comptroller's decision was arrived at without an adversary hearing, consequently there is no transcript or other record which reveals the findings and conclusions of the Comptroller incident to his decision. At the trial the Comptroller successfully urged the "executive privilege," thus barring disclosure of much of the evidence and the findings upon which he arrived at his judgment.

It is our opinion that the District Court proceeded according to law and that it would have been erroneous for the Court to have based its judgment merely upon review and analysis of the tenuous evidence disclosed by the Comptroller's file. It was the District Court's

mandatory duty to conduct an adversary hearing and to determine upon the whole record in a de novo proceeding whether the Comptroller's decision was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law.

■■ The test to be applied by the District Court is whether from all the evidence the Court finds that the decision of the Comptroller was supported by substantial evidence. "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. of New York v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938). Substantial evidence "means evidence which is substantial, that is, affording a substantial basis of fact from which the fact in issue can be reasonably inferred. * * * [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." NLRB v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300, 59 S.Ct. 501, 505, 83 L.Ed. 660 (1939). This test may not satisfy an academic desire for precision and specific criteria, any more than a system based on the determinations of various fact-finders ordinarily does. It is implicit in the present statutory provisions relating to acts of the Comptroller. If there be undue uncertainty or overmuch litigation, Congress may make more precise its treatment of the matter by singling out certain factors and making them determinative of the matter. The question in these cases is basically one of fact, for determination on a case by case basis.

It is apparent from the reply brief of the Comptroller, at pages 15, 16 and 17, that this Court is directly confronted with the recurring argument, in cases where the District Court's decision is contrary to the Comptroller's, that the District Court substituted its views for the judgment and discretion of the Comptroller.

The Comptroller argues that the District Court's independent determination that the area in question was not a "village" was error; that the District Judge's finding as to the existence of a "village" is not pertinent; and in support of this argument places reliance upon *Community National Bank of Pontiac,* supra. Congress by the enactment of 12 U.S.C.A., Section 36(c), has settled that argument. Section 36(c) in pertinent part states:

"(c) A national banking association may, with the approval of the Comptroller of the Currency, establish and operate new branches: * * * and (2) at any point within the State in which said association is situated, if such establishment and operation are at the time authorized to State banks by the statute law of the State in question by language specifically granting such authority affirmatively and not merely by implication or recognition, and subject to the restrictions as to location imposed by the law of the State on State banks."

The above-quoted section when considered with 17 M.S.A. 23.762, Comp.Laws 1948, Section 487.34, as quoted previously herein, leaves no doubt that in this case the District Court was required to consider the issue of whether or not the area in question was a village and, aided by such consideration, to determine whether the Comptroller's action was arbitrary and capricious.

The Comptroller's reliance upon inferences he has drawn from the opinion in *Community National Bank of Pontiac* is ill-founded. In Community National Bank of Pontiac, in the footnote on page 226 of 310 F.2d, the Court stated, "We find it unnecessary to consider the effect of the District Court's finding that the area was not a 'village.' This was clearly an alternative finding * * *."

■ The determination of the issue as to whether the area in question is or is not a village is a critical factor in arriving at the ultimate decision. This is a question to be determined under State

law. First National Bank of Logan v. Walker Bank & Trust Co., 385 U.S. 252, 87 S.Ct. 492, 17 L.Ed.2d 343. When from a consideration of the whole record including this factor the trial court determines that the Comptroller's decision was not based upon substantial grounds and was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law, the District Court is required to grant the relief sought in the declaratory judgment action. A contrary determination must result in a dismissal and denial of the relief sought.

■ Manufacturers also contends that the District Judge should have considered certain exhibits by which it was proposed to show Peoples' admissions that certain areas in the State of Michigan are or are not "villages." Other exhibits excluded were offered for purposes of comparing other Michigan "villages" to the area in question. A close scrutiny of the exhibits and supporting material and arguments thereon exposes the specious character of this contention. These collateral matters have no significant bearing on the precise question presented to the District Court for its consideration. We find no error in the exclusion of these exhibits.

As a prerequisite to deciding the ultimate issue, the District Court, guided by the Michigan courts' interpretation of the term, concluded that the area in question was not a "village" as envisioned by Michigan law. Further, upon reviewing the whole record, the Court determined that the Comptroller's decision was not supported by competent, substantial evidence and such decision was arbitrary, capricious and an abuse of discretion.

■ ■ Our review of the record convinces us that there is material evidence to support the findings of the District Judge and they are binding upon us. Where the trial has been to the District Judge without a jury, the Judge's findings must stand unless clearly erroneous. Federal Rules of Civil Procedure, 52(a). Finding no error, the judgment of the District Court is affirmed.